Compensation Appeals Board
No. 99-017

APPEAL OF HEIDI L. MIKELL

(New Hampshire Compensation Appeals Board)

November 28, 2000

*Borofsky, Lewis & Amodeo-Vickery, P.A.*, of Newington (*Mark S. Gearreald* and *Stephen E. Borofsky* on the brief, and *Mr. Gearreald* orally), for the petitioner.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Paul L. Salafia* on the brief and orally), for the respondent.

DALIANIS, J. The petitioner, Heidi L. Mikell, appeals a decision of the New Hampshire Compensation Appeals Board awarding her benefits at the diminished earning capacity rate retroactive to October 11, 1996. We vacate and remand.

The petitioner was employed by the respondent, Autofair Toyota, on June 27, 1995, as an auto-reconditioner. For nine weeks she worked part-time. Starting on September 2, 1995, she began working full-time. On November 30, 1995, after working twelve weeks full-time, the petitioner slipped and fell, injuring her lower back.

The petitioner initially went to a chiropractor for treatment. She then sought treatment from her family physician, Dr. Gustavson, who advised that she cease work in December 1995. Early in January 1996, Dr. Gustavson approved her return to light duty work. The petitioner also consulted Dr. Levy, who prescribed physical therapy and light duty work restrictions. On January 11, 1996, the petitioner stopped working for the respondent entirely.

On January 22, 1996, the petitioner contacted Dr. Graf, who had treated her years earlier for an unrelated injury. Dr. Graf advised that she be taken out of work as of January 22. The petitioner also saw Dr. Polivy on February 9, 1996, for an independent medical examination. Dr. Polivy stated that the petitioner was capable of performing light duty work, with the limitation that she be able to alternate among sitting, standing, and walking.

On May 29, 1996, after examining the petitioner, Dr. Graf wrote to the respondent's general manager, stating that

> [b]ased upon my most recent visit with [the petitioner] and also reflecting my knowledge of her condition of intervertebral disc herniation, I feel that she is not presently able to attempt employment, even on a part-time basis.

On October 11, 1996, in one of three decisions issued by the New Hampshire Department of Labor (DOL), a hearing officer determined that the petitioner failed to submit competent medical

evidence that she was either temporarily totally disabled or residually disabled as a result of her fall on November 30, 1995. The hearing officer also found that the respondent had attempted to provide the petitioner with light duty work as suggested by Drs. Polivy and Levy but that the petitioner had decided not to return to work. Thus, the hearing officer concluded that the petitioner had "voluntarily withdrawn from work that fit within her limitations" and granted the respondent's insurance carrier permission to terminate the petitioner's temporary partial disability benefits of $71.79 per week, which had been based upon an average weekly wage of $202.90. *See* RSA 281-A:31 (1999). On June 19, 1997, the DOL ruled that RSA 281-A:15, I(a) (1999) was the correct method of calculating the petitioner's average weekly wage. In applying RSA 281-A:15, I(a), the hearing officer divided the petitioner's cumulative gross earnings of $4,261.00 by the twenty-one weeks that she had worked, for a gross average weekly wage of $202.90.

The petitioner appealed both decisions to the board. The board upheld the average weekly wage calculation of $202.90. The board, however, concluded that the petitioner was entitled to temporary partial disability benefits from the date of the injury. In reaching this decision, the board relied upon medical records of Drs. Graf and Levy, including Dr. Graf's May 29, 1996, letter. The board stated that it gave more weight to Dr. Graf's opinion because he had been the petitioner's primary treating physician.

Both parties requested clarification of the board's award of "temporary partial disability benefits." The petitioner also asked that

> [p]ending clarification and any reconsideration in this matter, . . . the carrier be required to pay [the petitioner] at least the diminished earning capacity rate retroactive to October 11, 1996 [the date of the DOL decision terminating benefits] and prospectively, without prejudice to any party's position.

Pending the board's response, the petitioner filed a motion and a revised motion for rehearing. On December 9, 1998, the board issued a letter in which it stated:

> After a careful review of the file and current correspondence, the Panel has decided to amend the September 18, 1998 decision to include the following:

"The carrier shall pay the claimant benefits at the Diminished Earning Capacity Rate retroactive to October 11, 1996."

Additionally, the board denied the petitioner's motions for rehearing.

On appeal, the petitioner argues that the board erred by: (1) computing her average weekly wage under RSA 281-A:15, I(a); (2) denying her motion to compel wage schedules of comparable employees to help determine her average weekly wage under RSA 281-A:15, I(c) (1999); and (3) awarding her benefits at the diminished earning capacity rate.

"On appeal, we will uphold an order of the board unless it is erroneous as a matter of law or the petitioner has demonstrated that the order is unjust or unreasonable." *Appeal of HCA Parkland Medical Ctr.*, 143 N.H. 92, 93, 719 A.2d 619, 621 (1998) (quotation and brackets omitted); *see* RSA 541:13 (1997).

The petitioner first contends that the board erred when it computed her average weekly wage under RSA 281-A:15, I(a), because she worked for the respondent for fewer than twenty-six weeks before being injured and because of other circumstances related to her employment.

RSA 281-A:15 provides, in pertinent part:

I. Except as provided in paragraphs II and III and subject to RSA 281-A:28, 281-A:28-a and RSA 281-A:31-a, an average weekly wage shall be computed by using the method in subparagraph (a) or (b), or (c) that yields the result more favorable to the injured employee:

(a) By dividing the gross earnings of the injured employee in the service of the same employer during the preceding 26 weeks by that number of weeks; or

(b) By dividing the gross earnings of the injured employee in the service of the same employer during a period exceeding 26 weeks but not exceeding 52 weeks by the appropriate number of weeks.

(c) If, however, by reason of the shortness of time during which the employee has been in the employment of the employer or because of the nature or term of the employment, it is inequitable to compute the average weekly wage using the method in subparagraph (a) or (b), regard may be had to the rate of pay designated in the injured employee's

agreement of employment or to the gross earnings of persons in the same grade employed at the same work by the same employer or, if there are no persons so employed, by persons of the same grade employed in the same class of employment in the same locality.

RSA 281-A:15, I (1999).

"This court is the final arbiter of the meaning of a statute, as expressed in the words of the statute itself. We interpret statutes not in isolation, but in the context of the overall statutory scheme. Although we give undefined language its plain and ordinary meaning, we must keep in mind the intent of the legislation, which is determined by examining the construction of the statute as a whole, and not simply by examining isolated words and phrases found therein." *Appeal of HCA Parkland*, 143 N.H. at 94, 719 A.2d at 621 (quotations and citations omitted). We "construe workers' compensation law liberally . . . resolv[ing] all reasonable doubts in favor of the employee." *Appeal of Cote*, 144 N.H. 126, 130, 737 A.2d 1114, 1117 (1999).

Construction of RSA 281-A:15, I, is made difficult by the confusing language in subparagraph (a). Subparagraph (a) requires the computation of an injured employee's average weekly wage by dividing the employee's gross earnings "during the *preceding 26 weeks* by *that number of weeks.*" RSA 281-A:15, I(a) (emphasis added). The petitioner argues that as a matter of law the board was precluded from applying subparagraph (a) because she had not yet worked twenty-six weeks. The respondent counters that subparagraph (a) can apply to an employee who has worked fewer than twenty-six weeks by dividing the gross earnings of the employee during his or her employment by the number of weeks actually worked.

The petitioner's interpretation of subparagraph (a) would require an injured employee's gross earnings to be divided by twenty-six even if the employee has worked for the employer for fewer than twenty-six weeks. Although this interpretation is plausible, it is not the most reasonable because its practical implication is that subparagraph (a) would rarely, if ever, apply to an individual who worked fewer than twenty-six weeks. This is because, in almost all factual scenarios, dividing the individual's gross earnings by twenty-six, when the individual has worked fewer than twenty-six weeks, would be inequitable, requiring application of subparagraph (c).

While there may be more than one way to construe this language, "[w]e reject any strictly literal construction if it contravenes the

legislature's intended purpose." *Nashua Y.W.C.A. v. State*, 134 N.H. 681, 684-85, 597 A.2d 535, 537 (1991). The most reasonable interpretation of "that number of weeks" is, as the respondent contends, the number of weeks the employee actually worked.

If the legislature intended subparagraph (c) to apply whenever an injured employee worked fewer than twenty-six weeks, it could have said so clearly. Additionally, it defies logic that the legislature would use the phrase "by reason of the shortness of time" in subparagraph (c) if it intended subparagraph (c) to apply all but automatically when an injured employee worked any amount of time less than twenty-six weeks.

It is more probable that the legislature intended subparagraph (a) to apply to an employee who has worked twenty-six weeks or fewer and to divide that employee's gross earnings by the amount of time actually worked. When considering the overall workers' compensation statutory scheme, the legislature could hardly have intended that the phrase "average weekly wage" *not* mean "average weekly wage" as that term is commonly understood.

Thus, the application of subparagraph (c) would be triggered only in those limited situations where subparagraph (a) is inequitable, instead of almost automatically, when an employee has worked fewer than twenty-six weeks.

■ Because we give substantial deference to the board's interpretation of the statute which it is charged with interpreting, *see Littky v. Winchester School Dist.*, 129 N.H. 626, 629, 529 A.2d 399, 402 (1987), we interpret the phrase "that number of weeks" in subparagraph (a) to refer to the amount of time the petitioner actually worked. We reject the petitioner's argument that it was *per se* inequitable for the board to apply subparagraph (a) because she worked for the respondent for twenty-one weeks.

RSA 281-A:15, I, specifically directs the board, however, to compute benefits "by using the method in subparagraph (a) or (b), or (c) that yields the result more favorable to the injured employee." "When . . . more than one period is more favorable [to the employee], the [board] must use the *most* favorable period, *i.e.*, that which produces the highest average weekly wage." *Appeal of Gilbert*, 142 N.H. 842, 844, 714 A.2d 216, 217 (1998).

■ Apparently, the board applied subparagraph (a) without considering whether doing so was inequitable in light of the nature of the petitioner's employment. This was error. Accordingly, we vacate and remand for the board to determine whether applying subparagraph (a) was inequitable because of the nature of the petitioner's

employment. If the board so finds, then it should compute the petitioner's average weekly wage under subparagraph (c). *See* RSA 281-A:15, I.

The respondent contends that subparagraph (c) cannot apply because the respondent employs no similarly situated employees, an allegation that the petitioner disputes. Subparagraph (c), however, sets forth three factors that may be used to determine an injured employee's average weekly wage: (1) the rate of pay set forth in the employee's employment agreement; (2) the gross earnings of others in the same grade employed at the same work by the same employer; or (3) if no such persons exist, the gross earnings of persons employed in the same grade in the same class of employment in the same locality. *See* RSA 281-A:15, I(c). Thus, even assuming that no similar employee works for the respondent, the statute provides alternative means for determining the petitioner's average weekly wage.

Next, the petitioner contends that the board erred in denying her motion to compel discovery of comparable employees' earnings. In light of our ruling above, we vacate the board's ruling on the motion to compel.

Finally, the petitioner argues that the board erred in awarding her benefits at the diminished earning capacity rate retroactive to October 11, 1996.

The board initially ruled that the petitioner was "entitled to temporary partial disability benefits from the date of injury and continuing." Temporary partial disability benefits are suitable for an employee who is partially disabled but still able to work. *See* RSA 281-A:31; *Appeal of Lalime*, 141 N.H. 534, 538, 687 A.2d 994, 997 (1996). Upon the parties' requests for clarification, but without any explanation, the board amended its decision, ruling that the petitioner was entitled to benefits at the diminished earning capacity rate from October 11, 1996. N.H. ADMIN. RULES, Lab 510.03. We assume that the board, by amending its initial decision, concluded that the petitioner was entitled to temporary partial disability benefits from the date of her injury until October 11, 1996, after which time she was entitled to benefits at the diminished earning capacity rate.

The amended decision indicates that the board agreed with the DOL decision of October 11 that the petitioner was capable of performing at least light duty work. This conflicts with the findings of the board's initial decision, which relied upon Dr. Graf's letter stating that the petitioner was incapable of working at that time. The respondent contends that "there was substantial justification to

give the . . . opinion by Dr. Graf no weight whatsoever." Nonetheless, the board did rely upon Dr. Graf's opinion and thus presumably found it credible.

■ Absent an explanation for the board's amended ruling, we are unable to review it. Accordingly, we vacate both the board's initial and amended rulings.

On remand the board shall support its ruling concerning the application of either subparagraph (a) or subparagraph (c) and its ruling concerning temporary disability benefits by findings of fact and rulings of law sufficient to permit meaningful judicial review. *See Appeal of Kehoe*, 139 N.H. 24, 27, 648 A.2d 472, 474 (1994).

*Vacated and remanded.*

NADEAU, J., concurred; GRAY, J., retired superior court justice, and MCHUGH and GROFF, JJ., superior court justices, specially assigned under RSA 490:3, concurred.