Department of Environmental Services
Nos. 2002-335
 2002-448

## APPEAL OF TOWN OF NEWINGTON

## (New Hampshire Department of Environmental Services)

Argued: February 13, 2003
Opinion Issued: April 21, 2003

*Upton & Hatfield, LLP*, of Concord (*Robert Upton II* on the brief and orally), for the petitioner.

*Gallagher, Callahan & Gartrell, P.A.*, of Concord (*Michael D. Ramsdell* on the brief and orally), for the respondents.

DALIANIS, J. The petitioner, the Town of Newington (town), appeals an order by the New Hampshire Department of Environmental Services (DES) granting the respondents, Newington Energy, LLC, and Hawkeye Funding, LP (collectively NEL), several property tax exemptions under RSA 72:12-a (Supp. 2002). On appeal, the town specifically objects to DES granting: (1) a 100% exemption for a water injection system; (2) a 50% exemption for two stacks; (3) a 100% exemption for certain temporary construction devices; and (4) a 100% exemption for a storm water management system. NEL has cross-appealed, arguing that DES erred by: (1) reducing the exemption for the stacks to 50%; and (2) denying an exemption for heat recovery steam generators (HRSG) and an associated demineralization system. We affirm in part, vacate in part and remand.

NEL constructed and operates a combined cycle electric generation facility in Newington. On October 17, 2001, NEL applied to DES for several pollution control property tax exemptions. On March 29, 2002, DES issued its decision on the application, granting full exemptions for the water injection system, the stacks, the temporary construction devices, and the storm water management system, and denying an exemption for the HRSG and associated portion of the demineralization system.

After consideration of motions for rehearing filed by both parties, DES reduced the tax exemption for the stacks from 100% to 50%, but otherwise reaffirmed its March 29 ruling. Each party now appeals.

Originally, the town argued that the procedures followed by DES violated RSA chapter 541-A and the due process protections afforded by Part I, Article 15 of the New Hampshire Constitution. Because these issues were later withdrawn, however, we address only the tax exemption arguments.

RSA 72:12-a states, in pertinent part:

> I. Any person, firm or corporation which builds, constructs, installs, or places in use in this state any treatment facility, device, appliance, or installation wholly or partly for the purpose of reducing, controlling, or eliminating any source of air or water pollution shall be entitled to have the value of said facility and any real estate necessary therefor, or a percentage thereof determined in accordance with this section, exempted from the taxes levied under this chapter for the period of years in which the facility, device, appliance, or installation is used in accordance with the provisions of this section.
>
> . . . .
>
> III. The department shall investigate and determine whether the purpose of the facility is solely or only partially pollution control. If the department finds that the purpose of the facility is only partially pollution control it shall determine by an allocation of the applicant's investment in the facility what percentage of the facility is used to control pollution. In making its investigation, the department may inspect the facility and request such other information from the applicant as is reasonably necessary to assist it in making its determination.

The scope of our review of agency decisions under RSA 72:12-a is narrow. *Appeal of City of Berlin*, 131 N.H. 285, 289 (1988). Agency findings are deemed *prima facie* lawful and reasonable, and we will not sit as a trier of fact in reviewing them. *Appeal of Town of Hampton Falls*, 126 N.H. 805, 812-13 (1985). However, we will overturn agency decisions when the appealing party shows by a clear preponderance of the evidence that the agency's decision is unjust, unreasonable or unlawful. *Id.*

*I. Water Injection System*

The town argues that DES erred when it granted NEL a 100% exemption for the facility's water injection system, which injects water into

the combustion turbine to reduce its operating temperature. DES ruled that the sole purpose of the temperature reduction was to reduce emissions of the air pollutant nitrogen oxide (NOx) when the facility is using backup oil fuel, rather than natural gas, to generate electricity. Accordingly, DES granted the system a 100% exemption. The town does not dispute that the system reduces NOx emissions, but argues that its actual purpose is to permit the facility to maximize power generation when using backup fuel without subjecting the turbines to damage from high temperatures. The town argues that the reduction of NOx emissions is merely incidental to the system's operational purpose. Thus, the town argues that the grant of a 100% exemption was error because at least part of the system's purpose did not relate to the reduction of air pollution.

In an affidavit in support of NEL's application, Ronald Bozgo, a Vice President of Consolidated Edison Development, a principal owner of NEL, described the chemical reaction that results in the formation of NOx and explained that NOx formation increases in relation to increases in the combustion turbine's flame temperature. He stated that in order to reduce NOx formation, the water injection system is used to reduce flame temperature. Thus, he concluded that the sole purpose of the system is to reduce the formation of NOx when backup fuel is in use and that there was no operational reason to install such a system other than to reduce NOx formation. In fact, he stated that "there are significant undesirable operational side effects associated with a water injection system . . . ."

The town presented an affidavit from George E. Sansoucy, a professional engineer, in support of its claim that the pollution control benefits of the system were merely incidental to its power augmentation purpose. Sansoucy conceded that the water injection system reduced flame temperature, but asserted that the reduction was intended to increase power output, not to control pollution.

DES agreed with NEL that the sole purpose of the system was to control pollution. It found that Sansoucy's affidavit lacked specific information supporting his conclusions. DES noted, however, that it agreed with the town that the sole purpose of the steam injection portion of the system was to increase power production, and consequently it had denied an exemption for that portion.

DES, not the court, sits as the trier of fact and evaluates the competing evidence. *City of Berlin*, 131 N.H. at 289. We are reluctant to substitute our judgment for the expertise of administrative agencies. *Town of Hampton Falls*, 126 N.H. at 814. The finding at issue is supported by the record, and we are not persuaded by a clear preponderance of the evidence that DES' decision was unreasonable, unjust or unlawful. *See id.*

## II. Storm Water Management System

The town argues that DES erred in granting NEL's storm water management system a 100% exemption. The storm water management system consists of catch basins, a subsurface collection system, grassed drainage swales, two onsite detention basins, rip-rap for energy dissipation and roof drain systems. NEL claimed in its application that the sole purpose of the system is pollution control. DES granted a 100% exemption for the system, except for the roof drains which it determined were installed only for the purpose of removing water from the roof. On appeal, the town argues that the pollution control benefits of the system are merely fortuitous, and that the actual purpose of the system is to prevent flooding. Thus, according to the town, only additional investment related to pollution control, if any, should be exempted.

In support of its application, NEL again submitted an affidavit from Ronald Bozgo, in which he described the various functions of the storm water management system and related each to pollution control. He stated that the system included equipment designed to "minimize erosion, stabilize embankments and control runoff" as well as measures to "trap sediments preventing silt-laden runoff water from transgressing into sensitive environmental areas." The town, on the other hand, provided no evidentiary support for its claim that all or part of the system's purpose is flood prevention.

DES determined that each part of the storm water management system, other than the roof drains, contributed to minimizing and collecting pollutants which would otherwise be discharged directly to surface water or wetlands. DES found that the system was carefully engineered to minimize water pollution and complied with recommendations prepared for DES. Moreover, contrary to the town's position, DES found that flooding could be prevented simply by grading in such a way as to properly direct runoff. Accordingly, we conclude that the DES ruling is supported by the record and is not unreasonable, unjust or unlawful. *See City of Berlin*, 131 N.H. at 289.

## III. Temporary Construction Devices

The town argues that DES erred in granting NEL a 100% exemption for temporary construction devices that prevent erosion and intercept, collect and treat sediment-laden construction runoff. DES noted that because the devices were temporary, the exemptions would be limited to the period of time that the devices were in use. The town does not dispute that the devices control pollution during construction. Rather, the town

argues that RSA 72:12-a only permits tax exemptions for permanent pollution control facilities. We disagree.

In construing a statute, we look first to its plain meaning. *See Goode v. N.H. Legislative Budget Assistant*, 148 N.H. 551, 553-54 (2002). Further, when examining statutory language, we construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd or unjust result. *Handley v. Town of Hooksett*, 147 N.H. 184, 188 (2001). Unless we find that the statutory language is ambiguous, we need not look to legislative intent. *See id.*

RSA 72:12-a does not prohibit a tax exemption for temporary pollution control devices. Under the plain meaning of RSA 72:12-a, I, "any treatment facility" that is placed in use for the purpose of pollution control is exempt from taxation. The only statutory time restriction is that the exemption is limited to the period of years when the device is in use for the purpose of pollution control. RSA 72:12-a, I. Thus, under the statute, a temporary pollution control device should be granted a temporary tax exemption. *See id.* Moreover, given that the purpose of the statute is "to encourage construction of pollution control facilities," *Appeal of Public Serv. Co. of N.H.*, 124 N.H. 79, 85 (1983), denying an exemption to temporary facilities would be counterproductive because it would discourage the construction of temporary devices that serve important pollution control purposes. Accordingly, DES properly granted NEL an exemption for the temporary construction devices.

## IV. The Stacks

Both the town and NEL appeal the ruling granting a 50% exemption for two stacks. DES originally granted NEL a 100% exemption for the stacks because they disperse pollutants high into the air, reducing air pollution concentrations. However, after the town asserted that the stacks also serve purposes other than pollution control, such as increasing air flow to facilitate combustion, DES reduced the exemption to 50%.

NEL argues that DES' determination must be reversed because DES did not make sufficient findings of fact to support its decision. We agree. We cannot meaningfully review an agency's determination when it provides no illumination of its conclusions. *See Appeal of Mikell*, 145 N.H. 435, 442 (2000). Here, DES recognized the "dual function" of the stacks — pollution control and operational exhaust requirements — and then "deem[ed] the operational purpose to be equally as important as the air pollution control purpose." But DES provided no reasoning for this determination. Neither party has asserted that the stacks serve each function equally; nor did either party seek a 50% exemption.

■ Under RSA 72:12-a, III, DES is required to determine a partial tax exemption based upon the allocation of the applicant's investment in the facility's pollution control purpose. DES made no findings with regard to the investment allocated by NEL to the pollution control purpose of the stacks. Absent findings to support the 50% exemption, we are unable to meaningfully review it. *See Mikell*, 145 N.H. at 442. Accordingly, we vacate and remand for additional findings of fact.

*V. Heat Recovery Steam Generator*

NEL argues that DES erred in refusing to grant a full, or at least a partial, exemption for the HRSG and associated demineralization system. The HRSG receives super-heated exhaust from the combustion turbines. The demineralization system provides clean water to both the water injection system and the HRSG. The HRSG uses the demineralized water to remove heat from the exhaust. In this process, steam is generated which is then used to power a turbine to generate additional electricity. After the exhaust is cooled by the HRSG, it passes through the facility's Selective Catalytic Reduction (SCR) system. The SCR is necessary to remove NOx from the exhaust prior to its exit from the plant. It is undisputed that the SCR is a pollution control device worthy of a 100% tax exemption.

NEL claimed in its application that the SCR can only function if the exhaust temperature is lowered as it exits the turbine. Thus, NEL sought an exemption because the HRSG permits the SCR to function by performing the temperature reduction. The town disagreed with this characterization and argued that the HRSG's sole purpose is additional power generation, and that an SCR can function without any reduction in exhaust temperature.

In its March 29 ruling, DES denied NEL any exemption for the HRSG, finding that the HRSG would reduce exhaust temperatures even if the SCR were not installed due to the HRSG's role as an additional source of power generation. However, DES also stated that "[i]f there were a relationship between certain components within the HRSG and the SCR such that those components become an integral part of the proper operation of the SCR, then there might be a basis for granting a partial tax exemption for the HRSG." DES further stated that "if additional investment must be made to the HRSG to allow the SCR to operate," it would consider granting a partial exemption. DES also denied an exemption to the portion of the demineralization system that is associated with the HRSG, but indicated that a tax exemption for the portion associated with the water injection system would be appropriate.

In NEL's request for rehearing, it provided a supporting affidavit from Bozgo which detailed the interaction between the HRSG and the SCR.

Bozgo stated that because the SCR requires exhaust temperatures no greater than approximately 646 degrees Fahrenheit, a heat recovery device is necessary to reduce the exhaust temperature from the 1100 degrees Fahrenheit temperature at which it exits the turbine. In addition, the HRSG reduces the velocity of the exhaust to permit the SCR to effectively remove the NOx emissions. Thus, Bozgo stated that the SCR could not function without the HRSG and asserted that "NEL's entire investment in the HRSG was necessary for the SCR system to operate."

In objecting to NEL's request for rehearing on the HRSG ruling, the town did not provide any additional evidence to support its position, but referred to other facilities within the State for which DES had denied an exemption for the HRSG and insisted that the sole function of the HRSG was to increase power production.

In its ruling denying NEL's request for rehearing, DES acknowledged that the HRSG reduces the temperature and velocity of the exhaust before passing through the SCR. However, DES found that the sole purpose of the HRSG is heat recovery and power augmentation because it does not treat air pollution and therefore denied a tax exemption. Further, with regard to the demineralization system, DES denied NEL's motion for rehearing because NEL sought to exempt the entire system rather than only that portion which supplied the water injection system.

NEL argues that the ruling must be vacated because DES failed to make findings of fact in support of its decision. We agree. After DES explained in its March 29 ruling that it would consider an exemption if NEL could prove that there was a relationship between the HRSG and SCR or if an additional investment were made into the HRSG to make it compatible with the SCR, it denied NEL's motion for rehearing stating that its "investigation indicate[d] that the facility would perform the heat recovery function of the HRSG regardless of the existence of the SCR system." The only evidence submitted to DES in response to its March 29 ruling was NEL's affidavit from Bozgo, which described the relationship between the HRSG and the SCR. Yet DES did not address Bozgo's affidavit or give any indication that its investigation had produced information contrary to Bozgo's description. Moreover, DES did not state that it relied upon the town's assertion that other facilities within the State prove that the SCR would function in the absence of the HRSG. Rather, DES merely concluded that "the HRSG is not a treatment facility" because it only reduces exhaust temperature.

We are unable to discern from DES' ruling how it determined that the interaction of the HRSG and SCR was insufficient to warrant at least a partial exemption. Though DES may use its own expertise in reconciling conflicting evidence or may disbelieve unrefuted evidence, *see Appeal of*

*Savage*, 144 N.H. 107, 110 (1999), its ruling is devoid of findings of fact that would permit meaningful review, *see Mikell*, 145 N.H. at 442.

Because we cannot determine what reasoning DES relied upon in denying the exemption, we are unable to establish whether the exemption denial was unreasonable, unjust or unlawful. *See id.* Thus, we vacate DES' ruling with regard to the HRSG and remand to DES for findings of fact sufficient to permit judicial review. To the extent that DES' denial of an exemption for the demineralization system was predicated upon its ruling regarding the HRSG, that ruling is also vacated.

We note that, upon remand, DES may seek additional information, if necessary, to make findings of fact in accordance with this opinion. *See* RSA 72:12-a, III.

*Affirmed in part; vacated in part; and remanded.*

BRODERICK, NADEAU and DUGGAN, JJ., concurred.