Department of Environmental Services
No. 2004-435

APPEAL OF TOWN OF BETHLEHEM
(New Hampshire Department of Environmental Services)

Argued: June 7, 2006
Opinion Issued: November 2, 2006

*Boutin & Altieri, PLLC*, of Londonderry (*Brenda E. Keith* on the brief, and *Edmund J. Boutin* orally), for the petitioner.

*Brown, Olson & Gould, P.C.*, of Concord (*Bryan K. Gould* and *Philip R. Braley* on the brief, and *Mr. Gould* orally), for the respondent.

DUGGAN, J. The petitioner, Town of Bethlehem (Town), appeals an order of the New Hampshire Department of Environmental Services (DES) granting the respondent, North Country Environmental Services (NCES), several tax exemptions under RSA 72:12-a (2003). We affirm.

The following facts were found by DES or appear in the record before us. NCES operates a solid waste landfill facility (facility) in Bethlehem. *See generally N. Country Envtl. Servs. v. Town of Bethlehem*, 150 N.H. 606 (2004); *N. Country Envtl. Servs. v. Town of Bethlehem*, 146 N.H. 348 (2001). On March 4, 2002, NCES applied to DES for pollution control property tax exemptions pursuant to RSA 72:12-a on all components of the facility. In response, DES conducted an investigation that included reviewing NCES' application and supporting documentation, reviewing documents filed by the Town and a resident of Bethlehem, reviewing a report prepared by the Town's engineer, and visiting the facility.

On March 12, 2003, after completing its investigation, DES ruled that only the following components of the facility qualified for some form of tax exemption: (1) the detention ponds and silt fencing listed as part of the excavation and stormwater control measures; (2) the enclosed flare component of the leachate evaporation system; (3) the oil and water separator listed as part of both the maintenance building and the shop floor drain and collection system; and (4) the candlestick flare used as part of the landfill gas collection system.

NCES moved for rehearing. By order dated January 5, 2004, DES granted NCES' motion in part, concluding that the following components of the facility also qualified for tax exemptions: (1) the stone check dams, 4,000 feet of lined, riprap and gabion swales, culverts and berms, grading, and grass seed and fertilization; (2) the double liner system; (3) the leachate collection, conveyance, and disposal system; (4) the sideslope riser buildings, instrumentation and power lines; (5) the groundwater monitoring wells; (6) the soil borrow area materials incorporated into the swales and liner system; (7) the landfill gas collection system; and (8) the landfill gas monitoring system. DES affirmed its March 12, 2003 decision insofar as it denied tax exemptions with respect to the maintenance

buildings and shop floor drain collection system, the landfill cap system as to both air and water pollution, and the litter fencing.

The Town then moved for rehearing, which DES denied. The Town appealed to this court, and later sought to amend its appeal, asserting the existence of *ex parte* communications that it recently had received from the DES file. We remanded the case for further proceedings. On remand, DES invited the Town and NCES to submit further evidence and argument. In response, the Town filed a motion for rehearing, a motion to compel DES to answer questions concerning the alleged *ex parte* communications, and a motion to disqualify officials in the DES Commissioner's office due to the alleged *ex parte* communications. DES rejected the Town's arguments by order dated November 28, 2005.

In this appeal, the Town argues that: (1) DES misinterpreted and misapplied RSA 72:12-a; (2) DES' orders violated Part II, Article 5 of the State Constitution; (3) DES' orders violated Part I, Article 10 of the State Constitution; (4) DES' orders violated New Hampshire Administrative Rule, Env-Wm 102.129; (5) DES' handling of this matter violated the Administrative Procedure Act (APA) and the procedural due process guarantees of our State Constitution; and (6) DES mishandled certain alleged *ex parte* communications. We address each argument in turn.

The scope of our review of agency decisions under RSA 72:12-a is narrow. *Appeal of Town of Newington*, 149 N.H. 347, 349 (2003). Agency findings are deemed *prima facie* lawful and reasonable and we do not sit as a trier of fact in reviewing them. *Id.* However, we will overturn agency decisions when the appealing party shows by a clear preponderance of the evidence that the agency's decision is unjust, unreasonable or unlawful. *Id.*

*I. RSA 72:12-a*

The Town argues that DES unjustly, unreasonably or unlawfully determined that eight components of the facility qualified for tax exemptions under RSA 72:12-a because: (1) a landfill, in its entirety, may not be exempt from taxation under RSA 72:12-a; and (2) DES misinterpreted and then misapplied RSA 72:12-a with respect to each of the components for which NCES sought an exemption.

As to the Town's first argument, even if we assume *arguendo* that a landfill, in its entirety, does not constitute a treatment facility within the meaning of RSA 72:12-a, DES did not determine that the NCES facility, in its entirety, was eligible for a tax exemption. Rather, DES focused upon certain components of that facility and determined that eight of twelve of those components were eligible for a tax exemption. Thus, insofar as the Town contends that DES essentially granted a tax exemption to the whole facility, we reject its assertions. Accordingly, we turn to the Town's

arguments pertaining to how DES interpreted and applied the statute to the facility's components.

RSA 72:12-a, I, provides:

> Any person, firm or corporation which builds, constructs, installs, or places in use in this state any treatment facility, device, appliance, or installation wholly or partly for the purpose of reducing, controlling, or eliminating any source of air or water pollution shall be entitled to have the value of said facility and any real estate necessary therefore, or a percentage thereof determined in accordance with this section, exempted from the taxes levied under this chapter for the period of years in which the facility, device, appliance, or installation is used in accordance with the provisions of this section.

In matters of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *In the Matter of Beal & Beal*, 153 N.H. 349, 350 (2006). When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add words that the legislature did not include. *Id.*

The Town makes two statutory-based arguments: (1) that the statute requires DES to evaluate the facility as a whole rather than as separate components; and (2) even if it is proper for DES to evaluate individual components, it erred in determining that these components effectuated treatment. NCES counters that components of an integrated system designed to reduce, control or eliminate a source of pollution satisfy the requirements of RSA 72:12-a.

■ As to the Town's first argument, the statute does not require DES to evaluate the facility as a whole rather than as separate components. That is, the plain language of the statute does not indicate that every single component of a landfill facility must reduce, control, or eliminate a source of air or water pollution in order for any one part of that facility to qualify for a tax exemption under RSA 72:12-a. Rather, the statute speaks of "*any* treatment facility, device, appliance, *or* installation wholly *or partly* for the purpose of reducing, controlling, or eliminating any source of air or water pollution." RSA 72:12-a, I (emphasis added); *see also* RSA 72:12-a, III; *Appeal of City of Berlin*, 131 N.H. 285, 290 (1988) ("To obtain a tax exemption under RSA 72:12-a (Supp. 1988), as it is written, the applicant must have a *facility, device, appliance or installation* which 'treats' something for the purpose of air or water pollution 'reduction, control, or

elimination.'" (emphasis added)). Thus, DES' decision to evaluate whether particular components constituted a treatment facility, device, appliance or installation was not unjust, unlawful or unreasonable.

█ The Town next asserts that DES erred in concluding that the asserted components effectuated "treatment" within the meaning of the statute. In the context of RSA 72:12-a, we previously held that "treatment" is "the subjection of something to some action or process with a special end in view, the end often being to improve the quality of the thing undergoing treatment." *Berlin*, 131 N.H. at 290. Both sides agree that we should apply this interpretation of "treatment" in analyzing DES' decision regarding the components of the NCES facility.

In support of its position that the NCES facility and its components did not effectuate treatment, the Town argues that our analysis of the bark-burning boiler in *Berlin*, 131 N.H. at 289-90, requires us to conclude that the NCES facility and its components do not effectuate treatment. In *Berlin*, we held that a newly-built bark-burning boiler system, which did not emit sulfur dioxide into the air, did not constitute a pollution treatment facility, device, appliance or installation within the meaning of RSA 72:12-a. *Id.* at 290. Our decision, at least in part, was based upon the legislature's not expressly excluding non-polluting fuels or non-polluting processes from taxation under RSA 72:12-a. Here, however, DES found that the components of the facility do not simply generate less pollution from the start; rather, these components reduce, control or eliminate sources of air or water pollution which already have been created. Thus, the bark-burning boiler is unlike the facility components in the instant case.

█ In the instant case, DES determined that the facility's excavation and stormwater control measures, including the detention ponds, silt fencing, stone check dams, 4,000 feet of lined riprap and gabion swales, culverts, berms, grading, grass seeding and fertilization were eligible for tax exemption under RSA 72:12-a. In its application, NCES described the way in which each of these components works to control water runoff and facilitate leachate collection so as to prevent water pollution. In short, these components subject runoff to certain measures or processes which control both the water itself and the sediment it carries as a source of leachate pollutants, thereby improving the quality of the runoff and thus effectuating "treatment." *See Appeal of Public Serv. Co. of N.H.*, 124 N.H. 79, 88 (1983) (stating that inquiry under RSA 72:12-a focuses upon the purpose of the facility, device, appliance or installation). Although the Town presented contrary evidence, DES, not the court, sits as the trier of fact and evaluates the competent evidence. *Newington*, 149 N.H. at 350. In addition, although the Town takes a narrow view of what could be

considered pollution, we have held that the term "pollution" is to be construed broadly in the context of RSA 72:12-a. *See Appeal of Town of Hampton Falls*, 126 N.H. 805, 809 (1985). Because the Town challenges the conclusions DES drew from the evidence before it—and not the propriety of the evidence itself—we are reluctant to substitute our judgment for the expertise of the administrative agency. *See Newington*, 149 N.H. at 350. The finding at issue is supported by the record, and we are not persuaded by a clear preponderance of the evidence that DES' decision was unjust, unreasonable or unlawful.

Our analysis is essentially the same with respect to each of the seven remaining components that DES determined to be eligible for a tax exemption. Each of these components and its effects on air or water pollution was described in NCES' application and was met with opposition by the Town engineer's report. For example, NCES' application indicated that the double liner system controlled flow and prevented leachate from entering ground and surface water, while the Town engineer's report indicated that the double liner system did not accomplish any form of treatment. DES found that without the double liner system, leachate would not be collected and treated.

In addition, NCES' application indicated that the leachate collection, conveyance, and disposal system protected surface and ground water by controlling flow and preventing leachate from migrating to surface and ground water. In contrast, the Town submitted that this system did nothing more than collect and convey leachate. DES found that this device was a necessary component of an overall system designed to collect, treat and control a source of pollution.

Similarly, NCES indicated that sideslope riser buildings, instrumentation and power lines monitor leachate and prevent water pollution. The Town argued that these components did not effectuate any kind of treatment. DES found that these components were solely for the purpose of water pollution control as they accomplished sampling and monitoring functions as part of the treatment process.

Likewise, NCES indicated that the groundwater monitoring wells detect "release" from around the facility so that surface and groundwater contamination can be prevented. In contrast, the Town asserted that the monitoring wells do not accomplish any treatment. DES found that these wells were part of the double liner system and, as such, effectuated treatment.

In addition, NCES asserted that the soil borrow area materials augment the liner systems to prevent air and water pollution. The Town asserted that these materials do not accomplish treatment. DES found that these

materials were incorporated into the swales and liner system, which was determined to treat leachate pollution.

Finally, NCES stated in its application that the gas collection and monitoring systems monitor and evaporate leachate gasses to prevent air and water pollution. The Town argued that no leachate pollution is actually decreased. DES found that these two components conjunctively worked to subject landfill gas to the candlestick flare, thereby treating a source of pollution.

With respect to each of these findings, DES sits as the trier of fact and resolves conflicts in the evidence. *See Newington,* 149 N.H. at 350. The Town challenges the conclusions DES drew from the evidence before it— not the propriety of the evidence itself; therefore, we are reluctant to substitute our judgment for the expertise of the administrative agency. *See id.* We also note that DES took its own site visit as part of its evaluation of the NCES application. Accordingly, because DES' findings are supported by the record, we are not persuaded by a clear preponderance of the evidence that they were unreasonable, unjust or unlawful.

## II. Part II, Article 5

The Town next argues that DES' January 5, 2004 decision impermissibly exempts one parcel of property—the facility—from taxation in violation of Part II, Article 5 of the State Constitution. We disagree.

Part II, Article 5 endows the General Court with the power

> to make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, ordinances, directions, and instructions ... so as the same be not repugnant or contrary to this constitution, as they may judge for the benefit and welfare of this state, ... and to impose and levy proportional and reasonable assessments, rates, and taxes, upon all the inhabitants of, and residents within, the said state; ... *provided* that the general court shall not authorize any town to loan or give its money or credit directly or indirectly for the benefit of any corporation having for its object a dividend of profits.

Part II, Article 5 thus requires that all taxes be proportionate and reasonable, equal in valuation and uniform in rate, and just. *Opinion of the Justices (Mun. Tax Exemptions for Elec. Util. Personal Prop.),* 144 N.H. 374, 378 (1999). That one parcel of property receives differing tax treatment by operation of RSA 72:12-a exemptions does not alone indicate that constitutional limits have been transgressed. Property owners statewide may apply for RSA 72:12-a exemptions and are subject to the

requirements set forth in the statute. Accordingly, the effects on taxation of RSA 72:12-a, properly applied, would be uniform as to all property meeting the statutory requirements both across the State and within each taxing district or municipality. Thus, the constitutional mandate of uniformity and equality is satisfied. *Id.* at 380.

Furthermore, "[a]lthough exemptions necessarily result in a disproportionate tax burden on the remaining property in the taxing district, the legislature possesses broad discretion to select certain property for taxation while exempting other property." *Id.* at 378 (quotation omitted). Exemptions are constitutional if they are supported by just reasons and thereby reasonably promote some proper object of public welfare or interest. *Id.* Exemptions are not unconstitutional simply because they are granted to a for-profit entity. *Id.* at 380 (stating that although Part II, Article 5 limits the legislative power to authorize gifts by towns to corporations organized for profit, it does not extend to the authority of the legislature by its own act to provide a uniform exemption).

In *Berlin* we observed that "[t]he clear intent of RSA 72:12-a (Supp. 1988) was to create tax incentives for industry to construct pollution control facilities." *Berlin*, 131 N.H. at 289 (citation omitted). Further, the legislature has recognized protection against water and air pollution as a matter of legislative and statewide interest. *See, e.g.*, RSA 485-A:1 (2001) (water pollution); RSA 125-C:1 (2005) (air pollution); *see also Opinion of the Justices*, 103 N.H. 268, 270-71 (1961) (noting that scenic beauty along highways relates to the benefit and welfare of this state). The Town does not argue that encouraging pollution control through tax incentives is not a just reason supporting the statute. Nor does the Town argue that the statute fails to reasonably promote a proper object of public welfare or interest. The Town's sole argument is that since DES' January 5, 2004 decision exempts portions of this particular parcel of property from taxation, it violates Part II, Article 5. Since we have determined that DES applied RSA 72:12-a in a manner which was neither unjust, unreasonable nor unlawful, we reject the Town's arguments concerning an asserted violation of Part II, Article 5 of the State Constitution.

*III. Part I, Article 10*

The Town next argues that the DES decision violates Part I, Article 10 of the State Constitution insofar as it creates unequal benefits across the community. Part I, Article 10 provides:

> Government being instituted for the common benefit, protection, and security, of the whole community, and not for the

> private interest or emolument of any one man, family, or class of men; therefore, whenever the ends of government are perverted, and public liberty manifestly endangered, and all other means of redress are ineffectual, the people may, and of right ought to reform the old, or establish a new government. The doctrine of nonresistance against arbitrary power, and oppression, is absurd, slavish, and destructive of the good and happiness of mankind.

This provision of our constitution has commonly been regarded as setting forth a citizen's right to reform an ineffectual or manifestly corrupt form of government. *Opinion of the Justices (Mun. Tax Exemptions for Elec. Util. Personal Prop.)*, 144 N.H. at 381. We have also recognized that this provision is imbued with the principle of equality that pervades the entire constitution, thereby providing support for the maxim that the law cannot discriminate in favor of one citizen to the detriment of another. *Id.* Thus, Part I, Article 10, among other protections, forms a basis for a citizen's right to equal protection. *Id.*

■ In analyzing the Town's claims under Part I, Article 10, our precedent provides some guideposts. Although we have previously determined that raising tax revenue to aid a particular electric utility would violate Part I, Article 10, *see Opinion of the Justices*, 88 N.H. 484, 489 (1937), we have drawn a distinction between directly raising tax revenues on the one hand and tax exemptions on the other, *see Opinion of the Justices (Mun. Tax Exemptions for Elec. Util. Personal Prop.)*, 144 N.H. at 382. Similar to Part II, Article 5, Part I, Article 10 does not require absolute equality of burden in the case of tax exemptions, provided that the statute at issue advances a public purpose and is properly within the legislature's discretion in acting for the welfare of the state. *Id.* Thus, where, as here, a tax exemption is at issue, a public benefit conferred by the exemption may be sufficient to render it constitutional. *Id.*

■ Applying these principles to the instant case, we note that the Town does not seriously dispute that RSA 72:12-a generally confers a public benefit and advances a public purpose by attempting to minimize or reduce pollution through the provision of tax incentives for industry to construct pollution control facilities. *Berlin*, 131 N.H. at 289; *see Appeal of Public Serv. Co. of N.H.*, 124 N.H. at 86 (discussing public benefit of RSA 72:12-a). In addition, the creation of tax classifications is within the legislature's discretion. *Opinion of the Justices*, 115 N.H. 306, 308 (1975). Nevertheless, the Town appears to argue that the DES decision, as specifically applied in the instant case, somehow impermissibly renders these public purposes or benefits uneven. However, as we stated above, tax exemptions always

create certain imbalances and nothing in the record demonstrates that DES' decision in any way functioned unlike other tax exemptions in its effects either locally or statewide. Moreover, we have not found DES' application of RSA 72:12-a to the facts of this case to be unjust, unreasonable or unlawful. Accordingly, we reject the Town's argument that the DES order contravenes Part I, Article 10's guarantees regarding the common benefit, protection, and security of the whole community.

*IV. New Hampshire Administrative Rule, Env-Wm 102.129*

The Town's fourth argument is that DES, in declaring components of the facility eligible for an RSA 72:12-a exemption, impermissibly ignored New Hampshire Administrative Rule, Env-Wm 102.129 (eff. Oct. 29, 1997; expired Oct. 28, 2005), which the Town contends set forth a definition of "treatment facility." According to the Town, Rule 102.129, as it existed at the time of DES' consideration of NCES' application, "specifically exclude[d] a landfill from the definition of 'treatment facility.'"

Rule 102.129 provided:

> "Processing or treatment facility" means a facility which collects waste from any location, stores the waste for a limited period of time, subsequently processes or treats the waste[,] subsequently stores the processed or treated waste for a limited period of time and ultimately transfers the treated or processed waste to another location. The term excludes collection, storage and transfer facilities, landfills and land application sites.

While Rule 102.129 defines "processing or treatment facility" to exclude "landfills," Rule 102.129 was promulgated under the statutory authority of RSA 149-M:7 and RSA 147-A:3, neither of which is a taxation statute. Instead, RSA chapter 149-M pertains to solid waste management and RSA chapter 147-A pertains to hazardous waste management. Rule 102.129 pertained to the management of both solid and hazardous waste in New Hampshire. N.H. ADMIN RULES, Env-Wm 101.02(a) & (b) (eff. Oct. 29, 1997; readopted & amended Oct. 28, 2005). The differing purposes of RSA 72:12-a and RSA chapters 149-M and 147-A undermine the Town's claim that the definition of "processing or treatment facility" in Rule 102.129 encompassed or applied to the term "treatment facility" in RSA 72:12-a. These are two discrete contexts, and the Town has pointed to no legal or other authority which indicates that they are interdependent or that what was included in the definition of "processing or treatment facility" is necessarily the appropriate definition of "treatment facility," especially since the plain language of RSA 72:12-a does not preclude DES

from evaluating individual components. Accordingly, we reject the Town's arguments concerning Rule 102.129.

*V. Administrative Procedure Act and Procedural Due Process*

The Town next argues that DES' decision not to conduct its evaluation of NCES' application as an adjudicative proceeding contravened the APA and RSA 72:12-a, portions of DES' own administrative rules, and the Due Process Clause of our State Constitution. We address the Town's statutory, regulatory, and constitutional arguments *seriatim*.

The APA defines an adjudicative proceeding as "the procedure to be followed in contested cases, as set forth in RSA 541-A:31 through RSA 541-A:36." RSA 541-A:1, I (1997). Under the APA, a "contested case" is defined as "a proceeding in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after notice and an opportunity for hearing." RSA 541-A:1, IV (1997). In support of its position that this matter was a "contested case," the Town contends that it opposed granting an exemption to NCES and was therefore a party whose rights were required to be adjudicated pursuant to the "contested case" procedures of the APA. We conclude that the Town was not a "party" to the proceedings before DES.

"Party" is defined in the APA as "each person or agency named or admitted as a party, or properly seeking and entitled as a right to be admitted as a party." RSA 541-A:1, XII (1997). Nothing in the record indicates that the Town was named or officially admitted as a party to the proceedings before DES. In fact, DES expressly stated, in its November 28, 2005 order, that it never ruled upon the Town's motion to intervene because it did not consider the proceedings on NCES' application to be adjudicative.

In addition, the Town was not entitled as of right to be admitted as a party. Instead, the Town's involvement was pursuant to RSA 72:12-a, II, IV and VI and RSA 541-A:39 (1997). *See* RSA 72:12-a, II (notice to municipality by applicant); RSA 72:12-a, IV (notice to municipality by DES); RSA 72:12-a, VI (opportunity for municipality to move for rehearing or appeal); RSA 541-A:39, I (opportunity for municipality to submit data, views or comments). We have held that "the entitlement to notice of the proceedings and the opportunity to submit comments to the agency [does not] make one a party" for purposes of a "contested case" under the APA. *Appeal of Town of Nottingham*, 153 N.H. 539, 550 (2006). If the legislature desired to permit a municipality which opposed a tax exemption application the opportunity for a formal hearing and to become a party to an adversarial-type proceeding, it could easily have done so. It did not.

■ Accordingly, we conclude that DES was not required to treat the Town as a "party" as that term is statutorily defined in RSA 541-A:1, XII. Since the Town was not a "party" within the meaning of the APA, its arguments concerning its involvement in the DES proceeding do not implicate the requirements for a "contested case."

■ We find equally unpersuasive the Town's contention that its right to petition for rehearing under RSA 72:12-a, VI conferred upon it a right to formal adjudicative proceedings. First, the fact that RSA 72:12-a permits the Town to request a rehearing or appeal in accordance with RSA chapter 541 does not necessarily make it a "party" to the underlying tax exemption proceeding. *See, e.g.*, RSA 541:3 (1997) (persons other than parties may move for rehearing). Second, although RSA 72:12-a, VI confers upon the Town the right to request a rehearing or appeal, it specifically indicates that such a rehearing or appeal is conducted pursuant to RSA chapter 541—it does not indicate that such a rehearing triggers all of the requirements of the APA. The Town has not pointed to any provisions of RSA chapter 541 that would have required DES, upon receipt of the Town's motion for rehearing (or on remand), to conduct an adjudicative hearing as described in RSA 541-A:31-:36 (1997 & Supp. 2005). We observe that many courts have been reluctant to construe statutes that do not expressly require formal adjudicative proceedings as containing such a requirement. 1 K. DAVIS & R. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 8.2, at 385 (3d ed. 1994). We are likewise reluctant.

■ We now turn to the Town's argument that New Hampshire Administrative Rule, Part Env-C 204, required DES to conduct an adjudicative hearing on the issues the Town raised in the remanded proceedings. "The law of this State is well settled that an administrative agency must follow its own rules and regulations." *Town of Nottingham*, 153 N.H. at 554-55 (quotation omitted). DES has two sets of rules: one for adjudicative hearings (N.H. ADMIN RULES, Part Env-C 204) and one for non-adjudicative hearings (N.H. ADMIN RULES, Part Env-C 205). Which set of rules applies in a given proceeding is set forth in the text of the rules themselves. Part Env-C 205 "appl[ies] to the conduct of hearings held by the department to provide information and receive public comment in any matter that is not a contested case as defined by RSA 541-A:1, IV." N.H. ADMIN RULES, Env-C 205.01. Absent a proper basis upon which to conclude that the proceedings before DES constituted a "contested case," we conclude that DES was not required to apply Part 204.

Having addressed the Town's statutory and regulatory contentions, we turn to its constitutional argument. The Town argues that it had a procedural due process right to an adjudicative hearing under Part I,

Article 15 of our State Constitution. The Town also argues that RSA 72:12-a's procedural framework violates state constitutional due process guarantees.

Neither DES, NCES, nor the Town has addressed whether a municipality may assert a due process claim against a state agency under Part I, Article 15 of our State Constitution. *Compare Appeal of N.H. Dept. of Employment Security*, 140 N.H. 703, 710 (1996) (state agency cannot challenge another state agency's actions on state constitutional due process grounds because Due Process Clause protects only subjects), *with Town of Jay v. Androscoggin Energy, LLC*, 822 A.2d 1114, 1117 (Me. 2003) (discussing due process issue raised by Town in context of pollution control tax exemption proceedings). *See also Town of Hampton Falls*, 126 N.H. at 814 (declining to reach Town of Hampton's assertion that Water Supply and Pollution Control Commission violated municipality's due process rights in evaluating RSA 72:12-a tax exemption application); *City of Madison v. Ayers*, 271 N.W.2d 101, 103 (Wis. 1978); *Village of Schaumburg v. Doyle*, 661 N.E.2d 496, 499-501 (Ill. App. Ct. 1996), *appeal denied*, 667 N.E.2d 1063 (Ill. 1996); *Village of Sauget v. Pollution Control Bd.*, 566 N.E.2d 724, 726-27 (Ill. App. Ct. 1991), *appeal denied*, 575 N.E.2d 923 (Ill. 1991); 16B AM. JUR. 2D *Constitutional Law* § 930 (1998). For purposes of this appeal, we will assume, without deciding, that the Town may raise its due process challenge under Part I, Article 15.

In determining whether particular procedures satisfy the requirements of due process, we typically employ a two-prong analysis. Initially, we ascertain whether a legally protected interest has been implicated. *Bragg v. Director, N.H. Div. of Motor Vehicles*, 141 N.H. 677, 678 (1997). We then determine whether the procedures provided afford appropriate safeguards against a wrongful deprivation of the protected interest. *Id.* at 678-79.

In terms of a legally protected interest, the Town contends that it has a "clear interest in precluding improper exemptions that would shift the burden of taxation to other taxpayers." While the Town may have an "interest," in the general sense of the word, in ensuring that improper exemptions are not granted, a successful due process claim must be based upon a protected *liberty* or *property* interest. *Midway Excavators, Inc. v. Chandler, Comm'r*, 128 N.H. 654, 659 (1986). The Town does not argue that a liberty interest is here involved and we do not discern a protected liberty interest under the circumstances of this case. *See* 16C C.J.S. *Constitutional Law* § 1510, at 305-09 (2005) (describing liberty interests generally). Thus, the question becomes whether the Town has advanced a legally protected property interest. We conclude that it has not.

 That the Town may participate in tax exemption decisions by operation of statutes does not necessarily mean that it has a "property interest" within the meaning of Part I, Article 15. The hallmark of a legally protected property interest is an individual entitlement grounded in State law. *Midway*, 128 N.H. at 659. The Town has not identified any such entitlement. The Town has failed to explain why, given the legislature's broad powers in the area of taxation, a valid tax exemption statute, properly applied, would deprive it of anything to which it was entitled. *See Opinion of the Justices*, 117 N.H. 512, 515 (1977) ("The legislature has broad discretionary powers to classify subjects of taxation. Classifications made for just reasons do not violate any provisions of our constitution." (citation omitted)); *King Ridge, Inc. v. Sutton*, 115 N.H. 294, 296 (1975) ("As a general rule taxes cannot be assessed and collected in this State except by authority of the legislature."). Absent such a property interest, the Town's participation is of a statutory—not constitutional due process—dimension.

## VI. Ex Parte Communications

The Town also argues that the APA and Part I, Articles 15 and 35 required DES to handle differently certain alleged *ex parte* communications between representatives of NCES and DES. These communications consist of documents, e-mails, and handwritten notes. Initially, the Town was not made aware of these documents, e-mails, and notes—they were disclosed to the Town two to three months after it filed its first appeal with this court. The DES order found that DES disclosed these materials to the Town when they were discovered. Shortly after the Town received these communications, it moved to amend its appeal. We remanded for further proceedings. On remand, DES gave the Town and NCES an opportunity to submit evidence and argument concerning the communications.

DES then issued a post-remand order, in which it found that although these allegedly *ex parte* documents were in its file, many of them were not submitted by NCES or the Town. DES further found that many of these documents pertained to pending legislation. DES also found that a number of the facts contained in the allegedly *ex parte* materials were matters of public record that already had been published in news media and placed in the DES file. Against this factual backdrop, we turn to the Town's arguments.

 To the extent the Town argues that RSA 541-A:36 (1997) prohibits the types of communications at issue here, its arguments fail. By its plain terms, RSA 541-A:36 applies only to contested cases. Because the Town

330

has not established that the proceedings before DES were a contested case, a prerequisite of RSA 541-A:36 has not been satisfied.

 To the extent the Town argues that Part I, Article 15 required a different outcome, we again disagree. Absent a protected liberty or property interest, the Town's due process arguments fail. *See Midway*, 128 N.H. at 659.

 To the extent the Town makes its arguments pertaining to the alleged *ex parte* communications in the context of Part I, Article 35 of the State Constitution, we find them equally unpersuasive. Part I, Article 35 provides that "[i]t is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit." We have held that this mandate applies to both trial judges and members of administrative boards acting in a quasi-judicial capacity. *Appeal of Grimm*, 141 N.H. 719, 720 (1997). "An act is judicial in nature if officials are bound to notify, and hear the parties, and can only decide after weighing and considering such evidence and arguments as the parties choose to lay before them." *Appeal of City of Keene*, 141 N.H. 797, 800 (1997) (quotation omitted). Here, while DES was obligated to notify the Town and to allow it to present whatever data, views or comments it desired, it was statutorily authorized to investigate and make a determination regardless of submissions made by anyone, including the applicant and the Town. Further, and consistent with our due process analysis, we note that the Town has not here advanced any right or legal interest. *Cf. Winslow v. Holderness Planning Board*, 125 N.H. 262, 266-67 (1984) (discussing case involving dispute between two or more parties with competing interests). Accordingly, the Town has not advanced any proper basis upon which to conclude that the decision of DES was unjust, unreasonable or unlawful as to its determinations regarding the alleged *ex parte* communications.

Therefore, for the foregoing reasons, the decision of DES is affirmed.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.