Compensation Appeals Board
No. 2007-146

APPEAL OF HARLEYSVILLE INSURANCE COMPANY
(New Hampshire Compensation Appeals Board)

Argued: October 17, 2007
Opinion Issued: December 7, 2007

*Devine, Millimet & Branch, P.A.*, of Manchester (*Eric G. Falkenham* and *Elizabeth M. Murphy* on the brief, and *Mr. Falkenham* orally), for Harleysville Insurance Company.

*Bernard & Merrill, PLLC*, of Manchester (*Andrew A. Merrill* on the brief and orally), for State Farm Fire & Casualty Company.

*Shaheen & Gordon, P.A.*, of Dover (*Sean T. O'Connell* on the brief), for Property Casualty Association of America, as *amicus curiae.*

*Orr & Reno, P.A.*, of Concord (*Martha Van Oot* on the brief), for New Hampshire Association of Domestic Insurance Companies, as *amicus curiae.*

*Orr & Reno, P.A.*, of Concord (*Martha Van Oot* on the brief), for American Insurance Association, as *amicus curiae*.

*Coughlin, Rainboth, Murphy & Lown*, of Portsmouth, for Harry Durgin, filed no brief.

GALWAY, J. The petitioner, Harleysville Insurance Company (Harleysville), appeals a decision of the New Hampshire Compensation Appeals Board (CAB) finding its insured, Jane Kelly, liable for workers' compensation payments to a roofer injured at her home. We affirm in part and reverse in part.

The following facts appear in the record. In April 2004, Kelly purchased a home in Epping, which she intended to renovate and use as her primary residence. She moved into the home in October 2004.

In the spring of 2005, Kelly hired Alfred Case, proprietor of Al's Painting and Custom Homes, LLC (Al's Painting), to paint new windows she had purchased. Kelly asked Case to recommend someone to replace her roof and Case referred her to David Bisson. Kelly hired Bisson, who began work on the roof, but stopped before the job was complete. Kelly contacted Case, who told her that Bisson was now incarcerated. Case referred Kelly to a second roofer, Tom Beesley, who agreed to complete the job.

On June 14, 2005, Beesley arrived at Kelly's home to begin work on the roof. Beesley brought Harry Durgin to assist him. Beesley did not have workers' compensation coverage for Durgin. Shortly thereafter, Durgin fell and was seriously injured.

In November 2005, Durgin filed a notice of accidental injury naming Beesley as his employer. In December, Beesley responded with an employer's report of injury. In January 2006, Durgin requested a hearing with the New Hampshire Department of Labor (DOL). Following the hearing, the DOL Hearing Officer determined that Al's Painting was acting as the contractor at Kelly's home, that Beesley was an employee of Al's Painting, and that Beesley had hired Durgin at Case's instruction. The DOL Hearing Officer determined, therefore, that Al's Painting was responsible for the workers' compensation benefits of its employee, Durgin. State Farm Fire & Casualty Company, as the insurer of Al's Painting, appealed to the CAB.

After a *de novo* hearing pursuant to RSA 281-A:42-a (Supp. 2007), the CAB ruled that Kelly, rather than Al's Painting, was acting as the "contractor." The CAB further determined that Beesley was a subcontractor of Kelly, and Durgin was Beesley's employee. Therefore, the CAB concluded that pursuant to RSA 281-A:18 (1999), Kelly was responsible for the workers' compensation benefits of Beesley's uninsured

employee, Durgin. Finally, the CAB ruled that as Kelly's homeowner's insurance carrier, Harleysville was responsible for paying the workers' compensation benefits owed by her. Durgin and Harleysville both moved for rehearing or reconsideration, which the CAB denied. This appeal followed.

On appeal, Harleysville contends that the CAB erred in ruling: (1) that Kelly was liable as a "contractor" under RSA 281-A:18; (2) that Harleysville is responsible to pay Durgin's benefits; and (3) that Al's Painting was not acting as the general contractor. Al's Painting agrees that the CAB erred in its interpretation of the statutes and in finding Kelly to be the contractor responsible for Durgin's benefits, but argues that its determination that Al's Painting was not the contractor should be upheld.

In matters of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *Appeal of Town of Bethlehem*, 154 N.H. 314, 319 (2006). When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add words that the legislature did not include. *Id.*

RSA 281-A:18 states, in relevant part:

> A contractor who subcontracts all or any part of a contract shall bear the liability of the subcontractor of that contract for the payment of compensation under this chapter to the employees of the subcontractor, unless the subcontractor has secured the payment of compensation as provided for in this chapter.... For the purposes of this section, a contractor shall be defined as provided in RSA 281-A:2, III .... For the purposes of this section, a subcontractor shall be defined as provided in RSA 281-A:2, IV and shall include a subcontractor of a contractor as defined in this section.

To impose liability on a contractor under RSA 281-A:18 for the uninsured employees of a subcontractor, there must be a "contractor who subcontracts all or any part of a contract." RSA 281-A:18. Thus, there must be at least two contracts. There must be an initial contract between the entity desiring the work be done and the entity who will perform the work, and a second contract that "subcontracts all or any part of" the initial contract. Here, however, there is but one contract—the one between Kelly and Beesley. There was no initial contract that Kelly then "subcontracted" in whole or in part to a subcontractor. Therefore, there is no contractor to subcontractor relationship as contemplated by RSA 281-

A:18, and no liability for Durgin's injuries may be transferred to Kelly. We conclude that the CAB's conclusion to the contrary was legal error.

Harleysville next contends that the CAB's determination that it was responsible to pay Durgin's benefits was contrary to RSA 281-A:6 (1999). That determination, however, was contingent upon the CAB's ruling that Kelly was liable for those benefits. Because we have held that Kelly is not liable to pay Durgin's benefits, neither is Harleysville. Therefore, we need not address RSA 281-A:6.

Finally, Harleysville contends that the CAB's determination that Al's Painting was not the general contractor was contrary to the weight of the evidence. When reviewing the CAB's decision, we will not disturb it absent an error of law, or unless, by a clear preponderance of the evidence, we find it to be unjust or unreasonable. *Appeal of N.H. Youth Dev. Ctr.*, 152 N.H. 86, 87 (2005). We consider the CAB's findings of fact to be *prima facie* lawful and reasonable. *Appeal of CNA Ins. Co.*, 148 N.H. 317, 319 (2002). Our task is not to determine whether we would have found differently than did the CAB, or to reweigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record. *Appeal of Gamas*, 138 N.H. 487, 490 (1994).

During the hearing before the CAB, Case testified that about ninety percent of his business is painting and the remainder is light carpentry work or similar small jobs. He testified that he had been hired to paint windows for Kelly and nothing further. He also testified that while he had recommended Bisson and Beesley, he did not offer any quotes for their work, and did not arrange for Kelly to hire them. The CAB chose to credit Case's testimony, as well as similar testimony from his employee, David Garey, and not to credit Kelly's testimony that Case had a more substantial role in arranging the renovations and that he had otherwise acted as a contractor. We conclude based upon this testimony that there was competent evidence to support the CAB's finding that Al's Painting was not the contractor.

*Affirmed in part; reversed in part.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.