Department of Environmental Services
No. 2008-089

APPEAL OF TOWN OF RINDGE
(New Hampshire Department of Environmental Services)

Argued: September 11, 2008
Opinion Issued: October 31, 2008

*Bradley & Faulkner, PC*, of Keene (*Beth R. Fernald* on the brief and orally), for the petitioner.

*Gallagher, Callahan & Gartrell, P.C.*, of Concord (*Donald E. Gartrell* on the brief and orally), for the respondent.

BRODERICK, C.J. The petitioner, Town of Rindge, appeals an order of the New Hampshire Department of Environmental Services (DES) granting the respondent, Franklin Pierce University, a tax exemption under RSA 72:12-a (2003) (amended 2006) for its wastewater treatment facility. We affirm.

I

The following facts were found by DES or are supported by the record. Franklin Pierce University is a private four-year educational institution whose main campus is located on the shores of Pearly Lake near the base of Mount Monadnock in Rindge. The town lacks public water and sewer systems, and is unlikely to develop them in the foreseeable future. In 1985, the University constructed its own wastewater treatment facility (facility) to meet the needs of the campus community, investing $1,800,000. Since that time, the University has operated and maintained the facility at its own expense. At present, the University has plans to upgrade and expand the facility to meet future needs and to comply with federal and state law.

In July 2006, the University applied to DES for a pollution control tax exemption under RSA 72:12-a for the facility, including associated real property, equipment and proposed upgrades. DES conducted an investigation, which included a review of the University's written submissions, a meeting with its representatives and a visit to the facility. Additionally, DES met with town officials, and considered Rindge's written and oral objections to the University's requested exemption. Following its investigation, DES ruled that the full assessed value of the facility, including the proposed improvements, once constructed, qualifies for a tax exemption under RSA 72:12-a. Rindge's motion for rehearing was denied. This appeal followed.

## II

On appeal, Rindge argues that: (1) DES misinterpreted RSA 72:12-a; and (2) the tax exemption granted to the University violates the New Hampshire Constitution. We address each argument in turn.

In support of its argument that DES misinterpreted RSA 72:12-a, Rindge first contends that the legislative intent of the statute was to create a tax incentive for industry to implement pollution control measures, and that to allow the University's facility to benefit from an exemption would conflict with this purpose. Rindge also argues that no exemption is available to the University for its facility because state and federal law required its construction. Finally, Rindge asserts that human waste is not a recognized source of pollution within the meaning of the statute, and, therefore, the facility, which treats human waste, cannot benefit from the exemption. If the statute were interpreted to permit an exemption in this case, the town maintains, it would create an absurd result because individual septic systems would, necessarily, also be eligible for the exemption.

Our review of agency decisions under RSA 72:12-a is narrow in scope. *Appeal of Town of Bethlehem*, 154 N.H. 314, 318 (2006). "Agency findings are deemed *prima facie* lawful and reasonable and we do not sit as a trier of fact in reviewing them. However, we will overturn agency decisions when the appealing party shows by a clear preponderance of the evidence that the agency's decision is unjust, unreasonable or unlawful." *Id.* (citation omitted).

Here, our review of DES' decision is narrow. *Id.* Yet, we review an agency's interpretation of a statute *de novo*. *Appeal of Regenesis Corp.*, 156 N.H. 445, 454 (2007). "In matters of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add words that the legislature did not include." *Appeal of Town of Bethlehem*, 154 N.H. at 319 (citations omitted). "We do not look beyond the language of the statute to determine legislative intent if the language is clear and unambiguous." *Carignan v. N.H. Int'l Speedway*, 151 N.H. 409, 419 (2004).

RSA 72:12-a, I, provides:

> Any person, firm or corporation which builds, constructs, installs, or places in use in this state any treatment facility, device, appliance, or installation wholly or partly for the purpose of reducing, controlling, or eliminating any source of air or water pollution shall be entitled to have the value of said facility and any

real estate necessary therefor, or a percentage thereof determined in accordance with this section, exempted from the taxes levied under this chapter for the period of years in which the facility, device, appliance, or installation is used in accordance with the provisions of this section.

■ Rindge argues that because the University is not an industry, it should not benefit from the wastewater tax exemption. The plain language of RSA 72:12-a, however, makes no reference to "industry," nor can it be fairly read to imply such a limitation. The statute expressly provides that *any* person, firm, or corporation is entitled to an exemption. Therefore, it was both reasonable and lawful for DES to conclude that the University qualified for the exemption.

■■ The plain meaning of the statute also would not bar DES from granting tax exemptions for pollution control facilities that are required by law. The statute specifically gives DES the authority to grant an exemption for *any* treatment facility intended to reduce, control or eliminate air or water pollution. RSA 72:12-a, I. DES found that the University's wastewater facility consisted of several physical unit operations, including biological and chemical unit processes used to manage wastewater. Managing wastewater reduces, controls, or eliminates pollution caused by raw human waste. Therefore, DES reasonably found that the University's wastewater facility fell within the scope of the statute. It does not matter whether the available tax exemption provided the incentive to construct and maintain the facility. RSA 72:12-a imposes no such condition upon the tax exemption. We have upheld tax exemptions where parties were similarly required by law to implement a pollution control device. *See, e.g., Appeal of Town of Hampton Falls*, 126 N.H. 805, 810-11, 815 (1985) (upholding a tax exemption for a water cooling device at a nuclear power plant where the device was required to comply with the Water Pollution Act).

■ Finally, Rindge contends that human waste is not "pollution" within the meaning of the statute. We conclude otherwise. "We have held that the term 'pollution' is to be construed broadly in the context of RSA 72:12-a." *Appeal of Town of Bethlehem*, 154 N.H. at 321. Consistent with this holding, when DES reviewed the University's tax exemption application, it found that "[w]astewater from a college campus is a source of water pollution within the meaning of RSA 72:12-a." Rindge presented no statutory or regulatory evidence to the contrary. Instead, Rindge asserted that DES' interpretation of RSA 72:12-a leads to an "absurd" result by implicitly allowing "every owner of a septic system in the State of New Hampshire [to be entitled to] a tax exemption." Assuming, without deciding, that the plain

meaning of the statute permits DES to grant a tax exemption to individual septic systems, we disagree that such a result would necessarily be "absurd." In any event, whether individual septic systems are entitled to a tax exemption is not before us.

In sum, DES has not misinterpreted the statute. RSA 72:12-a permits DES to grant a wastewater treatment tax exemption to the University for its facility. Accordingly, Rindge has failed to show by a clear preponderance of the evidence that DES' decision is unjust, unreasonable or unlawful.

### III

We turn now to the town's constitutional arguments. Rindge argues that the tax exemption violates Part II, Article 5 and Part I, Article 10 of the New Hampshire Constitution for two reasons. First, Rindge contends that DES' interpretation of RSA 72:12-a is not supported by just reasons and fails to promote a proper object of public welfare or public interest. In its brief Rindge argues: "No public interest is served when a tax break is given to a taxpayer who does nothing except what the law requires." Second, Rindge argues that granting the University a tax exemption for its facility creates an unconstitutional unequal benefit.

We have said that the New Hampshire Constitution "requires that all taxes be proportionate and reasonable, equal in valuation and uniform in rate, and just." *Opinion of the Justices (Mun. Tax Exemptions for Elec. Util. Personal Prop.)*, 144 N.H. 374, 378 (1999). When the legislature grants a tax exemption, the loss of tax revenue necessarily results in an increased tax burden upon other taxpayers. *See Petition of Savings Bank*, 68 N.H. 384, 387 (1895) ("Inequality in taxation is the result of every exemption."). Nevertheless, the legislature retains liberal powers under the constitution with respect to the classification of taxable property, *Smith v. N.H. Dep't of Revenue Admin.*, 141 N.H. 681, 687 (1997), and "[e]xemptions are constitutional if they are supported by just reasons, and thereby reasonably promote some proper object of public welfare or interest," *Opinion of the Justices*, 144 N.H. at 378 (quotation omitted). *See Appeal of Town of Bethlehem*, 154 N.H. at 324 ("Similar to Part II, Article 5, Part I, Article 10 does not require absolute equality of burden in the case of tax exemptions, provided that the statute at issue advances a public purpose and is properly within the legislature's discretion in acting for the welfare of the state."). In this context, whether the exemptions are supported by "just reasons" equates to rational basis review. *Smith*, 141 N.H. at 687; *N. Country Envtl. Servs. v. State of N.H.*, 157 N.H. 15, 19 (2008).

DES' grant of the exemption to the University under RSA 72:12-a was supported by just reasons. The decision was based upon the plain

meaning of the statute and upon reasonable findings that the facility qualified for a pollution control tax exemption under the terms of the statute. DES reasonably found that, within the meaning of the statute, "[w]astewater from a college campus is a source of water pollution," and "[the] system . . . is a pollution treatment facility." It also found "[t]here is no purpose for [the facility] other than to treat wastewater," and that its full value qualified for a tax exemption under the statute.

The tax exemption at issue promotes several proper objects of public welfare and public interest, despite the fact that a pollution control device was required by law to treat the University's wastewater. The town's arguments fail to acknowledge that entities have considerable discretion in planning how to comply with pollution control laws. For example, whether DES grants tax exemptions for pollution control devices may affect at what point in time an entity elects to install a particular device or what type of device it ultimately installs. Entities may be encouraged to preemptively install devices earlier than absolutely necessary, or to install higher quality devices than the minimum that the law requires. Either way, a potentially cleaner environment results, which is a proper object of public welfare and public interest.

Another public benefit, as the University points out in its brief, stems from the fact that the University's facility fulfills a pollution control obligation which might otherwise fall to Rindge. The University observes: "[E]xemption of private wastewater treatment facilities . . . [provide] a direct municipal benefit to other taxpayers: the burden of treat[ing] [wastewater] . . . is, and will remain, an obligation of the private operators that need not be borne by other townspeople . . . ." Essentially, as the University's brief suggests, if the University did not build and operate its own wastewater treatment facility, Rindge could have been required to do so. RSA 485:28 (2001) supports this suggestion, providing:

> [DES] is hereby empowered to investigate the conditions and methods relating to the disposal of sewage in any municipality . . . and to require the installation of public sewers, . . . whenever such investigation demonstrates that individual sewage disposal systems are inadequate or incapable of protecting the health and welfare of the citizens . . . or preventing pollution of the surface waters of the state . . . .

■ DES' decision to grant the exemption to the University does not create an unconstitutional unequal benefit as alleged by the town. As established, the statute advances pollution control, a valid public purpose, which is properly within the legislature's discretion in acting for the welfare of the state. Thus, absolute equality is not required, and the fact that

Rindge residents may be burdened with higher taxes as a result of the University's tax exemption does not, by itself, render the tax exemption unconstitutional. *Appeal of Town of Bethlehem*, 154 N.H. at 324.

In sum, DES' decision is supported by just reasons, promotes proper objects of public welfare and public interest, and does not create an unconstitutional unequal benefit. Accordingly, we reject Rindge's arguments that the tax exemption granted to the University for its wastewater treatment facility violates Part II, Article 5 and Part I, Article 10 of the New Hampshire Constitution.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.