NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2012-481

THE STATE OF NEW HAMPSHIRE

v.

RICHARD GNESS

Argued: October 16, 2013
Opinion Issued: January 14, 2014

Michael A. Delaney, attorney general (Nicholas Cort, assistant attorney general, on the brief and orally), for the State.

Getman, Schulthess, & Steere, P.A., of Manchester (Andrew R. Schulman, on the brief and orally), for the defendant.

LYNN, J. The defendant, Richard Gness, appeals his convictions following a jury trial in Superior Court (Smukler, J.), for possession of the controlled drug psilocin with intent to distribute, possession of cocaine, and possession of marijuana, all in violation of RSA 318-B:2 (2011). He argues that the trial court erred in denying his motion to suppress evidence derived from the warrantless search of a desk drawer located in the office of his convenience store. He contends that because the search did not satisfy the requirements of the administrative search exception to the warrant requirement, it violated the

Fourth Amendment of the Federal Constitution and Part I, Article 19 of the New Hampshire Constitution.  We affirm.

I

The record establishes the following pertinent facts.  The defendant owned and operated Dick's General Store (Store) in Danbury.  The defendant was licensed by the New Hampshire Liquor Commission (Commission) to sell beer and wine for consumption off-premises.  See RSA 178:18 (Supp. 2013).  The defendant maintained an office behind the customer area of the Store and lived in an apartment above the Store.

In 2009, the Commission was informed by an anonymous source that the defendant was selling liquor at the Store, in violation of his license and RSA title XIII.  On October 3, 2009, three investigators from the Commission arrived at the Store to investigate the allegation and to conduct an annual premises inspection.  The Commission conducts annual premises inspections of every licensee that sells alcohol for use on and off premises, as well as additional premises checks to investigate complaints of possible license violations.  Two investigators went into the Store and spoke with the defendant briefly about the layout of the Store and other matters relevant to the annual premises inspection.  The investigators then asked for, and received, the defendant's permission to enter the Store's back storage rooms to observe the beer, wine, and grocery inventory.  During the inspection, the defendant showed one of the investigators his office, a room behind the customer area of the Store with a desk where he kept paperwork for the Store.

At some point during the inspection, a customer came into the Store and asked for a certain brand of vodka.  The defendant, looking at an investigator while he spoke, told the customer that he did not sell vodka.  The customer turned, looked at the investigator and then back at the defendant, and left the Store.  After the customer left the Store, the investigator asked the defendant to produce the Store's beer and wine invoices to verify that the defendant had at least sixty days' worth of invoices available for inspection, as required by Commission rules.  The defendant produced the beer invoices but could not locate the wine invoices.

At that point, the second investigator was inspecting the rear area of the Store.  There, he peered into a box that contained a paper bag, inside of which he observed some wine and a piece of paper.  He removed the paper from the bag and saw that it was a Commission receipt for both wine and vodka, dated approximately three and a half weeks earlier.  The receipt listed six 750 milliliter bottles of vodka.  The defendant's license did not allow him to sell vodka at the Store.

2

Upon discovering the receipt, both investigators questioned the defendant about the vodka. The defendant told the investigators that he had purchased the vodka, and that it was in his apartment above the Store. When the investigators asked him to retrieve the vodka, he became quiet, prompting an investigator to ask the defendant whether he had consumed the vodka. The defendant first stated that he had, but then stated that he was keeping the vodka at an offsite location.

Because they did not believe the defendant's conflicting answers to their questions, the investigators continued their inspection in an effort to locate the vodka. One investigator went into the defendant's office and, without asking the defendant for permission, opened a desk drawer that the investigator believed was large enough to hold several 750 milliliter bottles of vodka. Inside, the investigator observed several plastic bags containing a green vegetative matter that smelled like marijuana. At that point the investigators applied for, and received, a search warrant. In conducting their search pursuant to the warrant, they searched the defendant's upstairs apartment where they found marijuana, cocaine, psilocybin mushrooms, and bottles of vodka.

The defendant was indicted on three charges: (1) possession of the controlled drug psilocin with intent to distribute; (2) possession of marijuana with intent to distribute; and (3) possession of cocaine. Prior to trial, he moved to suppress all evidence derived from the search of his office desk. Following an evidentiary hearing, the trial court denied the motion, concluding that the administrative search exception to the warrant requirement applied to the search of the desk drawer. After a jury trial, the defendant was convicted of possession of psilocin with intent to distribute, possession of cocaine, and possession of marijuana. This appeal followed.

II

On appeal, the defendant argues that the trial court erred in denying his motion to suppress the evidence derived from the warrantless, non-consensual search of his desk drawer. He argues that because the search did not satisfy the requirements of the administrative search exception to the warrant requirement, it violated the Fourth Amendment to the Federal Constitution and Part I, Article 19 of the New Hampshire Constitution. We first address the defendant's claim under the State Constitution and rely upon federal law only to aid our analysis." State v. Ball, 124 N.H. 226, 231-33 (1983).

The New Hampshire Constitution guarantees citizens the right to be free from unreasonable searches and seizures. N.H. CONST pt. I, art. 19. Accordingly, "a warrantless search is per se unreasonable and evidence derived from such a search is inadmissible unless the State proves that the search

3

comes within one of the recognized exceptions to the warrant requirement."
State v. Turmelle, 132 N.H. 148, 152 (1989) (quotation omitted). "In New
Hampshire, we have explicitly recognized an administrative search exception."
Appeal of Morgan, 144 N.H. 44, 49 (1999). Before this exception applies, three
criteria must be satisfied: "First, there must be a substantial government
interest that informs the regulatory scheme pursuant to which the inspection
is made. Second, the warrantless inspections must be necessary to further the
regulatory scheme. Finally, the implementation of the statutory inspection
program must provide a constitutionally adequate substitute for a warrant."
Id. (quotation omitted). Adoption of these specific criteria guarantees New
Hampshire citizens protection against unreasonable administrative searches.
Turmelle, 132 N.H. at 153.

A

As a threshold matter, the defendant argues that there are two additional
limiting factors in the administrative search exception analysis: that the
operator of the commercial premises is a participant in a "closely regulated"
industry, and that the inspections are carried out pursuant to a statutory
scheme. See New York v. Burger, 482 U.S. 691, 702 (1987). Because our
current test adequately encompasses both factors, we need not consider nor
analyze them separately.

B

With regard to the first criterion, the defendant concedes that New
Hampshire has a substantial government interest in regulating all aspects of
the alcohol industry. See RSA title XIII; cf. Hickingbotham v. Burke, 140 N.H.
28, 32 (1995) (noting that, "[s]ince the repeal of Prohibition, virtually every
aspect of the manufacture, sale and distribution of alcoholic beverages has
been regulated by the legislature" (quotation omitted)); Colonnade Corp. v.
United States, 397 U.S. 72, 75-76 (1970) (noting the long history of alcohol
regulations from colonial to modern times). Accordingly, we need not consider
it further.

C

With regard to the second criterion, the defendant argues that the
warrantless inspection of the desk drawer was not necessary to further the
regulatory scheme. We disagree. Requiring investigators to obtain a warrant
before inspecting a licensee's commercial premises or records would impede
the inspectors' abilities to detect violations of state liquor laws and to quickly
and efficiently investigate wrongdoing that may pose a threat to public safety.
Appeal of Morgan, 144 N.H. at 50. Warrantless access to pertinent records
also is necessary to ensure that the mere prospect of inspections will prompt

licensees to comply with the law; thus, warrantless inspections also have a deterrent effect. Id.

We addressed the administrative search exception to the warrant requirement in the context of the pharmaceutical industry in Appeal of Morgan, in which we found that the administrative search of a pharmacy was necessary to further the statutory scheme. Id. In that case, a compliance officer from the New Hampshire Board of Pharmacy (Board) visited the pharmacy of a licensed pharmacist-in-charge to conduct an inspection. Id. at 45-46. During the visit, the compliance officer observed that "a number of the pharmacy's records were inaccurate and disorganized and subsequently recommended an accountability audit." Id. at 46. As a result of the audit, the Board commenced proceedings against the pharmacist for various statutory violations. Id. Ultimately, the Board restricted the pharmacist's license to prevent him from acting as pharmacist-in-charge and imposed a fine. Id. On appeal, the pharmacist argued that the audit constituted an illegal administrative search under the Federal and State Constitutions. Id. at 48. In upholding the search, we stated that it satisfied the second criterion of the test for warrantless administrative searches because "requiring a warrant before an inspection would impede inspectors' abilities to detect faulty records and illegal dispensation of drugs and to quickly investigate wrongdoing that may pose a threat to public safety." Id. at 50.

Appeal of Morgan is similar to the instant case. The compliance officer in Morgan found that the pharmacy's records were both inaccurate and disorganized, in violation of Board rules, and authorized a further inspection — an accountability audit — based upon his observations. Id. at 46. Like the compliance officer in that case, the investigators here discovered strong evidence that the defendant was selling vodka from the Store, in violation of his license. The investigators properly pursued further investigation by searching the defendant's desk drawer. In both cases, the investigators had the statutory authority to enter the licensed premises and investigate statutory violations. See Appeal of Morgan, 144 N.H. at 47 (authorizing the pharmacy board to "enter pharmacies to investigate possible violations" pursuant to RSA 318:8 (Supp. 1998)); RSA 179:57, I (2002) (authorizing liquor commission investigators to "cause frequent inspections to be made of all the premises with respect to which any license has been issued under the provisions of this title").

In the liquor industry, as in the pharmaceutical industry, warrantless searches promote efficiency, allow investigators to quickly investigate potential wrongdoing, and deter statutory violations. For these reasons, the search in this case was necessary to further the statutory scheme and, therefore, the second criterion was satisfied.

D

Finally, the defendant argues that the third criterion for a warrantless administrative search was not satisfied because the implementation of the Commission's inspection program did not provide a constitutionally adequate substitute for a warrant. Specifically, he contends that the search of the desk drawer was not sufficiently limited in time, place, and scope. We disagree.

In State v. Turmelle, we upheld a warrantless search of a package pursuant to the Federal Plant Quarantine Act, finding that the administrative search exception to the warrant requirement applied to the search. Turmelle, 132 N.H. at 153. In analyzing the third criterion — whether the implementation of the statutory scheme served as an adequate substitute for a warrant — we looked to what factors guided the plant inspector's decision to open the package to search for contraband. Id. at 154. In that case, the plant inspector "reasonably believed that it would be appropriate for him to open a personal package lacking a permit stamp sent from a fruit-growing region of Hawaii that had the 'right weight and feel' for agricultural contraband." Id. at 153. We held that the plant inspector's recitation of the particular factors that led him to inspect the package "demonstrated that articulable guidelines limited inspectors' discretion," and showed that "the quarantine program insures that inspectors may only inspect a package when they have a reasonable belief that it would be appropriate to look for contraband there of a type within the purview of the regulatory scheme." Id. at 154.

As with the Plant Quarantine Act in Turmelle, RSA title XIII provides articulable guidelines that limit investigators' discretion during inspections. RSA 179:57 states that "[t]he commission shall cause frequent inspections to be made of all the premises" licensed under title XIII. RSA 179:57, I. RSA 176:9 allows investigators to enter licensee premises to investigate violations of Commission rules issued pursuant to title XIII. RSA 176:9, III (Supp. 2008). RSA 175:1 defines "premises," in pertinent part, as "all parts of the contiguous real estate occupied by a licensee over which the licensee has direct or indirect control or interest and which the licensee uses in the operation of the licensed business." RSA 175:1, LIV (2002).

RSA 179:57 lists six circumstances that may lead to the Commission suspending or revoking a liquor license: violation of "any of the provisions of law or any of the rules of the commission adopted under" title XIII; failing "to superintend in person or through a manager approved by the commission"; allowing the licensed premises "to be used for any unlawful purposes"; knowingly designating a convicted felon to be in charge of the premises without commission approval; failing to "carry out in good faith the purposes of this title"; or "if the premises are regularly the site of violence." RSA 179:57, I. By

6

detailing the conditions that constitute license violations, the statute guides investigators during both annual inspections and premises checks.

In addition, the defendant's license contained specific requirements and limitations. The defendant held a combination license pursuant to RSA 178:18, allowing him to sell "fortified wine, table wine, and beverages for consumption only off the premises designated in the license and not to other licensees for resale." RSA 178:18, I. The defendant could sell beverages only in the "immediate container" in which he received them. Id. Further, the license authorized the defendant "to transport and deliver beverages, tobacco products, and table or fortified wines ordered from and sold by [him] in vehicles operated under [his] control or an employee's control." Id. Thus, these specific license restrictions both guide investigators during inspections and put the defendant on notice about actions that are unauthorized under his particular license.

Based upon the overall statutory scheme and the information gleaned by investigators during the inspection and from the anonymous source who indicated that the defendant was selling vodka from the Store, it was reasonable for the investigators to inspect the defendant's desk drawer in order to ensure that he was complying with Commission rules. Further, there is no question that the defendant's desk was part of the commercial "premises" subject to inspection. The desk was located on the premises, behind the customer area of the Store, in the defendant's office. The office was where the defendant kept paperwork for operation of his business. Accordingly, the investigators were well within their statutory authority to inspect the desk.

The defendant argues that the Commission could have satisfied its statutory duties, and verified "virtually all aspects of compliance" with title XIII by conducting unannounced inspections of public areas, kitchens, and bar wells, and by demanding that licensees produce records, rather than inspecting more private places such as desk drawers. We find this argument unpersuasive, and believe that the statutory scheme is an adequate substitute for a warrant: it provides investigators with concrete guidance during their searches — thus sufficiently limiting investigator discretion — while also putting licensees on notice of their obligations under Commission rules. See Appeal of Morgan, 144 N.H. at 50 (holding that the third criterion of the administrative search exception was satisfied, as the "statutory scheme provide[d] sufficient restraint on arbitrary agency action") (citation omitted). Thus, the third criterion was satisfied, as the statutory scheme provides an adequate substitute for a warrant.

We finally address the defendant's claim that the warrantless search of the desk drawer violated the Fourth Amendment to the Federal Constitution. The Federal Constitution offers the defendant no greater protection than does

7

the State Constitution under these circumstances.  See Burger, 482 U.S. at 702 (stating that in order for a warrantless administrative inspection of a commercial premises to be reasonable within the meaning of the Fourth Amendment, the following three-part test must be satisfied:  (1) there must be a substantial government interest; (2) the warrantless inspection must be necessary to further the regulatory scheme; and (3) the inspection program must provide a constitutionally adequate substitute for a warrant).  Because all three criteria of the test are satisfied, we reach the same result under the Federal Constitution as we do under the State Constitution.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.