NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Wetlands Council
Case No. 2023-0278
Citation: Appeal of Port City Air Leasing, Inc., 2024 N.H. 71

APPEAL OF PORT CITY AIR LEASING, INC.
(New Hampshire Wetlands Council)

Argued: January 3, 2024
Opinion Issued: December 24, 2024

Hoefle, Phoenix, Gormley & Roberts, PLLC, of Portsmouth (Jacob Marvelley and Daniel Hoefle on the brief, and Jacob Marvelley orally), for the petitioner.

Preti Flaherty Beliveau & Pachios PLLP, of Concord (Nathan R. Fennessy on the brief and orally), for the intervenor.

BASSETT, J.

[¶1] The petitioner, Port City Air Leasing, Inc. (Port City), appeals an order of the New Hampshire Wetlands Council (Council) that dismissed on standing grounds Port City's administrative appeal of the New Hampshire Department of Environmental Services' (DES) decision to grant a wetlands permit to the intervenor, Pease Aviation Partners LLC d/b/a Million Air Portsmouth (Million Air). Port City argues that the Council erred when it concluded that Port City lacked standing under RSA 482-A:9 (2024) and RSA

482-A:10, I (2024) to appeal the wetlands permitting decision. Port City also asserts that, if those statutes do not afford it standing to appeal to the Council, the statutes violate its state and federal due process rights. We affirm.

## I. Factual Background

[¶2] The following facts are supported by the record or are otherwise undisputed. Port City leases land and buildings located at Pease International Tradeport from the Pease Development Authority. The lease provides that Port City may use the property to offer certain aircraft-related services. Million Air has proposed to lease land, which abuts a portion of Port City's leased premises, from the Pease Development Authority to build and operate a facility also providing aircraft-related services.

[¶3] In connection with this proposal, Million Air submitted an application to the DES Wetlands Bureau for a permit to dredge and fill wetlands in order to construct an access road to the proposed facility. The Wetlands Bureau issued the permit in June 2022. Port City filed an administrative appeal of that decision with the Council, claiming that DES's issuance of the permit was unlawful and unreasonable. The Hearing Officer permitted Million Air to intervene in that proceeding. See RSA 21-M:3, VIII (Supp. 2023) (providing that attorney general shall appoint hearing officers for appeals to councils established under RSA chapter 21-O); RSA 21-O:5-a, I (Supp. 2023) (establishing the Wetlands Council). Million Air subsequently moved to summarily dismiss the appeal, arguing that Port City lacked standing.

[¶4] The Hearing Officer ruled that Port City lacked standing to appeal DES's decision because Port City is not a "person aggrieved" under RSA 482-A:10, I, which defines "person aggrieved" as the applicant and any person entitled to notice by mail under RSA 482-A:8 and RSA 482-A:9. Specifically, the Hearing Officer rejected Port City's argument that it is entitled to notice by mail under RSA 482-A:9 as an "abutting landowner." RSA 482-A:9. The Hearing Officer also rejected Port City's arguments that the statutes are unconstitutional if they do not afford Port City standing. Port City filed a motion for reconsideration and rehearing, which the Hearing Officer denied. This appeal followed.

## II. Standard of Review

[¶5] Our standard of review of the Council's decision is set forth in RSA 541:13 (2021). Appeal of N.H. Dep't of Envtl. Servs., 173 N.H. 282, 289 (2020); RSA 21-O:14, III (2020). Under this statute, the Council's findings of fact shall be deemed to be prima facie lawful and reasonable. RSA 541:13. Port City, as the petitioner, has the burden of demonstrating that the Council's decision was "clearly unreasonable or unlawful." Id. We must uphold the Council's decision

except for errors of law, unless we are satisfied, by a clear preponderance of the evidence before us, "that such order is unjust or unreasonable." Id. We review the Council's rulings on issues of law de novo. Appeal of Michele, 168 N.H. 98, 105 (2015).

III. Analysis

A. Interpretation of RSA 482-A:9 and RSA 482-A:10, I

[¶6] On appeal, Port City first argues that the Hearing Officer erroneously interpreted RSA 482-A:9 and :10. Resolving this issue requires us to engage in statutory interpretation. Statutory interpretation is a question of law, which we review de novo. Appeal of Town of Lincoln, 172 N.H. 244, 247 (2019). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. at 247-48. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. at 248. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Id. Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole. Id.

[¶7] RSA 482-A:10, I, provides, in relevant part, that:

Any person aggrieved by a decision made by the department under RSA 482-A:3 may appeal to the wetlands council and to the supreme court as provided in RSA 21-O:14 . . . . A person aggrieved under this section shall mean the applicant and any person required to be noticed by mail in accordance with RSA 482-A:8 and RSA 482-A:9.

RSA 482-A:8 and RSA 482-A:9 require DES to provide notice by mail of any public hearing on an RSA 482-A:3 proposal to: the applicant, property owner, local governing body, planning board, and municipal conservation commission, RSA 482-A:8; and to "all known abutting landowners," RSA 482-A:9.

[¶8] Port City asserts that it is an abutting landowner entitled to notice under RSA 482-A:9. It contends that under Appeal of Michele, 168 N.H. 98 (2015), and Appeal of Town of Lincoln, 172 N.H. 244 (2019), the terms of its lease grant it sufficient interests in the leased premises to make it a "landowner." Million Air counters that Port City is not a "landowner" because its interests in the leased premises are not equivalent to fee ownership. We agree with Million Air.

[¶9] We first consider the plain meaning of "landowner" as used in RSA 482-A:9. See Lincoln, 172 N.H. at 247-48. The legislature has not expressly

3

defined "landowner" in this context — as it has in at least one other statute — as including a lessee, tenant, or occupant of the property. See RSA 212:34, I(b) (Supp. 2023) (defining "[l]andowner" as used in recreational use immunity statute as including "an owner, lessee, holder of an easement, [or] occupant of the premises"); cf. RSA 498-A:2, II (2010) (defining "[c]ondemnee" for purposes of eminent domain procedure act as, in part, "the owner of record of property taken or to be taken, including tenants for life or years"). Instead, the legislature left undefined the term "landowner" as used in RSA chapter 482-A. See RSA 482-A:2 (2024).

[¶10] When a term is not defined in the statute, we look to its common usage, using the dictionary for guidance. Michele, 168 N.H. at 102; RSA 21:2 (2020). The plain meaning of "landowner" is "an owner of land." Merriam-Webster's Unabridged Dictionary, https://unabridged.merriam-webster.com/unabridged/landowner (last visited Dec. 17, 2024). And, as we previously explained in Michele and Lincoln when interpreting similar terms in related statutes, "owner" means "one that has the legal or rightful title whether the possessor or not." Michele, 168 N.H. at 103 (quotation and emphasis omitted); see also Lincoln, 172 N.H. at 248. Accordingly, "landowner" means one that has the legal or rightful title to land whether the possessor of that land or not.

[¶11] Michele and Lincoln further inform our understanding of the meaning of "landowner" as used in RSA 482-A:9. In Michele, we addressed whether parties who held title to a shoreline easement qualified as "owners" under RSA 482-A:11, II (2024) such that they could apply for a permit to construct a dock in water adjacent to their easement. See Michele, 168 N.H. at 100-01, 103-04. We interpreted "owner" and "ownership" as encompassing property interests "other than fee ownership." Id. at 103. We concluded, based on the broad scope of the easement at issue and the common law rights attendant to the grant of an express easement, that the shoreline easement holders had sufficient ownership interests to apply for a dock permit. See id. at 103-04.

[¶12] We subsequently addressed a related but distinct question in Lincoln: whether the holder of a limited easement for inspection of a levee constituted the "owner" of the levee responsible for its maintenance and repair under RSA 482:11-a (2024). See Lincoln, 172 N.H. at 245-47. In concluding that the easement holder in Lincoln was not the "owner" of the levee, we distinguished the facts in Lincoln from those in Michele and clarified our holding in that case. See id. at 249-53. We explained that the expansive easement at issue in Michele granted exclusive rights to use the land for whatever purpose the easement holders desired, making their interest in the land "tantamount to fee ownership." Id. at 249. By contrast, the easement holders in Lincoln had a limited and non-exclusive right to enter land only to inspect the levee "with a view to its proper maintenance and operation," and

4

the fee owner of the land specifically retained ownership and control of the levee.  Id. (quotation omitted).

[¶13] Read together, Michele and Lincoln establish that, for purposes of RSA chapter 482-A, although a person need not be the fee owner of the property to be an "owner," Michele, 168 N.H. at 103, the person must hold interests in the property "tantamount to fee ownership," Lincoln, 172 N.H. at 249.  These cases also demonstrate that whether a person is an "owner" or "landowner" in this context is a fact-driven inquiry, depending in large part upon the scope of the interests held.  See id. at 249, 253.  Accordingly, we must examine the terms of Port City's lease to assess whether it possesses sufficient interests in the leased premises to qualify as a "landowner."  Cf. Alexander v. Blackstone Realty Assocs., 141 N.H. 366, 368 (1996) ("The proper interpretation of a lease is ultimately a question of law for this court to determine." (quotation and brackets omitted)).

[¶14] Based on the terms of the lease, we do not agree with Port City that it has interests in the leased premises tantamount to fee ownership.  While it is true that Port City, like the easement holders in Michele, has the apparent right to exclusive use of the leased premises, see Michele, 168 N.H. at 100, that is where the similarities end.  Unlike the easement holders in Michele who could use the shore frontage "for whatever purposes they may desire," id. (quotation omitted), Port City may use the leased premises only for the limited purposes enumerated in the lease: sale of aviation fuel, air cargo operations, storage and maintenance of ground equipment, hangaring of aircraft, and office space to support those services.  Indeed, the lease prohibits Port City from engaging in "any use" not "specifically granted" in the lease "without the prior express written consent" of the lessor.  The lease also circumscribes Port City's control over the leased premises by, among other things, requiring it to obtain lessor approval before making any improvements or alterations to the leased premises.  Compare id. at 103 (explaining that grantee of express easement takes by implication whatever rights are reasonably necessary to enjoy easement, including the right to make improvements), with Lincoln, 172 N.H. at 249 (distinguishing Lincoln from Michele in part based on fact that fee owner in Lincoln specifically retained ownership and control over the levee).

[¶15] Moreover, Port City does not hold title to the leased land, whereas the easement holders in Michele held title to a deeded easement appurtenant to their non-waterfront property.  See Michele, 168 N.H. at 100, 103.  Such an appurtenant easement would run with the non-waterfront property — the dominant estate — and be transferable and inheritable with it.  See Cricklewood on the Bellamy Condo. Assoc. v. Cricklewood on the Bellamy Trust, 147 N.H. 733, 737 (2002).  In contrast, Port City holds title to only the buildings and improvements on the leased premises.  And it holds that title only for the duration of the lease, which has a five-year term with options to extend for additional five-year terms up to a maximum of thirty years.  Nor are

5

Port City's interests in the property freely transferable: its ability to assign or sublease any part of the premises is, with limited exception, subject to the lessor's approval. Ultimately, Port City's interests are not of an expansive or enduring nature. Its rights in the premises spring from the lease and are therefore contingent upon its continued compliance with the lease terms.

[¶16] We acknowledge that Port City acquired through the lease other benefits and burdens arguably attendant to land ownership, such as the ability to mortgage its leasehold interest and seek tax abatement and the obligation to pay municipal fees and taxes on the leased premises. We also observe that Port City claims it is listed on the tax cards as the "[o]wner" of a portion of the leased premises. However, in light of the fundamental distinctions between Port City's interests and those of the easement holders in Michele, we do not find these additional benefits and burdens sufficient to make Port City's interests in the leased premises "tantamount to fee ownership." Lincoln, 172 N.H. at 249. We therefore conclude that Port City is not a "landowner" for purposes of RSA 482-A:9, and, consequently, not a "person aggrieved" with standing to appeal to the Council under RSA 482-A:10, I.

[¶17] To the extent Port City asserts that this construction of the statutes leads to an absurd, unjust, or unconstitutional result because it would deprive all "injured tenants" of the right to appeal to the Council, we disagree. We do not interpret RSA 482-A:9 and :10 as precluding all injured tenants from appealing to the Council. As explained above, whether a person is a "landowner" is a fact-intensive inquiry based on the nature and extent of the person's interests in the land. We do not think it an absurd, unjust, or unconstitutional result that a tenant with different interests in leased land may qualify as a landowner with statutory standing to appeal to the Council while Port City lacks that ability. Cf. Rudder v. Dir., N.H. Div. of Motor Vehicles, 175 N.H. 38, 43-44 (2022) (explaining that "a literal reading of a statute leads to absurd results when it makes untenable distinctions between persons who are identically situated" and rejecting claim of absurdity because our statutory interpretation resulted in "disparate treatment of differently situated people").

B. Due Process Challenges

[¶18] We next turn to Port City's arguments that if RSA 482-A:9 and RSA 482-A:10, I, preclude it from appealing to the Council, the statutes are unconstitutional on two due process grounds: (1) the statutes deprive it, as an injured party, of a right to a remedy; and (2) the statutes fail to provide it a pre-deprivation hearing. We review the constitutionality of a statute de novo. Deere & Co. v. State of N.H., 168 N.H. 460, 471 (2015). The party challenging a statute's constitutionality — here, Port City — bears the burden of proof. See id. In reviewing a legislative act, we presume it to be constitutional and will not declare it invalid except upon inescapable grounds. Id. Port City raises only "as-applied" constitutional challenges. See Huckins v. McSweeney, 166 N.H.

6

176, 179 (2014) (explaining difference between facial and as-applied challenges). We note that Port City raised in its opening brief what it frames as a facial challenge to the statutes. However, in its reply brief, Port City withdrew that challenge.

[¶19] Port City first argues that, if RSA 482-A:9 and RSA 482-A:10, I, preclude it from appealing to the Council, the statutes violate its due process rights under Part I, Article 14 of the State Constitution because it, as an injured party, would have no avenue for challenging the permitting decision. Part I, Article 14 of the State Constitution provides:

> Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws.

N.H. CONST. pt. I, art. 14. The purpose of this provision is to make civil remedies available and to guard against arbitrary and discriminatory infringements upon access to courts. Huckins, 166 N.H. at 180. The right to a remedy is not a fundamental right, but is relative and does not prohibit all impairments of the right of access. Id. "Part I, Article 14 does not guarantee that all injured persons will receive full compensation for their injuries." Id. (quotation omitted).

[¶20] Port City claims that issuance of the wetlands permit will injure it because construction of the access road, and ultimately operation of Million Air's proposed facility, pose the risk of disturbing existing contaminants and adding new contamination to the wetlands. That contamination, Port City claims, could spread to its leased premises, impacting its water supply and triggering its environmental indemnity obligations to its lessor. Although, as we have construed the statutes, Port City does not have an administrative avenue for appealing the permitting decision and redressing these claimed injuries, that does not mean it is without a remedy. See, e.g., Hauser v. Calawa, 116 N.H. 676, 676-79 (1976) (affirming damages award in suit involving claims of trespass and negligent creation of private nuisance based upon flow of contaminated water from defendant's property to plaintiff's property). Accordingly, we conclude that the absence of an administrative remedy under RSA 482-A:9 and :10 does not violate Port City's due process rights under Part I, Article 14 of the State Constitution. See Petition of Goffstown Educ. Support Staff, 150 N.H. 795, 803 (2004) (concluding that, although school support staff had no remedy under statutory provision at issue, their rights to a remedy were not violated because they had available equitable remedies and alternative statutory remedy).

[¶21] Port City next argues that the absence of a right for it to appeal under RSA 482-A:9 and :10 violates its procedural due process rights under the State and Federal Constitutions in that the statutes deprive it, as an injured party, of the opportunity for a pre-deprivation hearing. We first address Port City's claim under the State Constitution and rely upon federal law only to aid in our analysis. See State v. Ball, 124 N.H. 226, 231-33 (1983).

[¶22] Part I, Article 15 of the State Constitution provides, in relevant part: "No subject shall be . . . deprived of his property, immunities, or privileges, put out of the protection of the law, exiled or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land . . . ." N.H. CONST. pt. I, art. 15. "Law of the land in this article means due process of law." Appeal of Nguyen, 170 N.H. 238, 243 (2017) (quotation omitted). "We engage in a two-part analysis in addressing procedural due process claims: first, we determine whether the individual has an interest that entitles him or her to due process protection; and second, if such an interest exists, we determine what process is due." Id. (quotation omitted).

[¶23] Given Port City's extensive briefing on the issue of standing, we clarify that a party's burden to establish standing to pursue a constitutional claim is distinct from the burden of proof required to prevail on a constitutional claim. Compare Appeal of Richards, 134 N.H. 148, 154 (1991) (per curiam) (explaining that party has standing to raise constitutional issue when party's own personal rights have been or will be directly affected — in other words, that the party has suffered or will suffer an "injury in fact"), with Nguyen, 170 N.H. at 243 (outlining procedural due process analysis). To prevail on its procedural due process claim, Port City must establish a protected liberty or property interest, see Appeal of Town of Bethlehem, 154 N.H. 314, 328 (2006), of which it will be deprived, Fuentes v. Shevin, 407 U.S. 67, 84-86 (1972) (reasoning that application of replevin statutes to temporarily seize plaintiffs' goods constituted a "deprivation" for due process purposes). "The hallmark of a legally protected property interest is an individual entitlement grounded in State law," Bethlehem, 154 N.H. at 329, which "cannot be removed except for cause," Duffley v. N.H. Interschol. Ath. Assoc., Inc., 122 N.H. 484, 491 (1982) (quotation omitted).

[¶24] Port City asserts that it has a legally protected property interest "as an abutting long-term tenant making long-term investments in improvements to its facility, particularly given its environmental indemnity and the risk that Million Air's construction and operations in and near these wetlands will trigger that indemnity." We construe this as an argument that Port City's lease gives rise to a protected property interest. See Fuentes, 407 U.S. at 86-87 (concluding that, under conditional sales contract, appellants acquired protected property interest in continued possession of goods).

8

[¶25] Setting aside the issue of whether Port City has a legally protected property interest, it has not identified how a <u>deprivation</u> of such interest would occur as a result of the issuance of the wetlands permit. <u>Compare</u> <u>CCAH v. Chester County Aviation Authority</u>, 967 F. Supp. 2d 1098, 1101, 1113 (E.D. Pa. 2013) (observing that plaintiff failed to establish deprivation of protected property interest warranting procedural due process protection because its long-term lease, permitting it to provide aircraft-related services at airport, had not been terminated), <u>with</u> <u>Cross Continent Development v. Town of Akron</u>, 742 F. Supp. 2d 1179, 1183, 1188-90 (D. Colo. 2010) (concluding plaintiff adequately alleged procedural due process claim where defendant terminated plaintiff's long-term lease of property adjacent to airport without written notice). In short, Port City does not allege a deprivation of a property interest approaching those that this and other courts have held trigger due process protections. <u>See, e.g.</u>, <u>Nguyen</u>, 170 N.H. at 243 ("This court has held that the <u>revocation</u> of a license necessary for one's occupation is a legally protected property right that may not be denied without affording due process." (emphasis added)); <u>Greene v. Lindsey</u>, 456 U.S. 444, 450-51 (1982) (observing that tenants evicted from public housing had "been deprived of a significant interest in property: . . . the right to continued residence in their homes").

[¶26] Accordingly, we conclude that Port City has not met its burden of establishing that it will be deprived of a protected property interest triggering due process protection under the State Constitution. <u>See</u> <u>Deere</u>, 168 N.H. at 471 (party challenging constitutionality of statute bears the burden of proof). The Federal Constitution offers Port City no greater protection than does the State Constitution under these circumstances. <u>See</u> <u>Nguyen</u>, 170 N.H. at 243 (requiring individual to establish protected interest triggering due process protections under State Constitution); <u>Fuentes</u>, 407 U.S. at 84 (applying same standard under Federal Constitution). We therefore reach the same result under the Federal Constitution as we do under the State Constitution.

IV.    <u>Conclusion</u>

[¶27] In sum, we conclude that Port City lacks standing under RSA 482-A:9 and RSA 482-A:10, I, to appeal the issuance of the wetlands permit to the Council. We further determine that this construction of the statutes as applied to Port City does not violate its state or federal due process rights as discussed herein. We therefore affirm the Hearing Officer's dismissal of Port City's appeal. To the extent Port City raises additional arguments not addressed above, they are deemed waived because they were raised for the first time on appeal in its reply brief, <u>see</u> <u>Panas v. Harakis & K-Mart Corp.</u>, 129 N.H. 591,

617-18 (1987), or otherwise do not warrant further discussion, see Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

MACDONALD, C.J., and DONOVAN and COUNTWAY, JJ., concurred; HANTZ MARCONI, J., sat for oral argument but did not participate in the final vote.