**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2024-0254, <u>Michael L. McLaughlin v. J. Martin McLaughlin</u>, the court on October 7, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(3). The defendant, J. Martin McLaughlin, appeals an order of the Superior Court (<u>Colburn</u>, J.) imposing a constructive trust in favor of the plaintiff, Michael L. McLaughlin, over fifty percent of the shares of McLaughlin Moving Company, Inc. (MMCI or the company). On appeal, the defendant argues that the trial court erred in determining that: (1) clear and convincing evidence supported the imposition of the constructive trust; and (2) the statute of limitations did not bar the plaintiff's action. <u>See</u> RSA 508:4 (2010). We affirm.

I.     <u>Facts</u>

The trial court found, or the record otherwise supports, the following facts. The plaintiff and the defendant are brothers. Their grandfather started a moving company during the 1930s. John H. McLaughlin (John H.) — the father of the plaintiff and defendant — became the owner of this moving company after the grandfather passed away.

Then, while the parties were children, John H. acquired several other moving-related companies. In the 1980s, John H. transferred ownership of these companies to the plaintiff and the defendant. Some of these companies were consolidated into a larger company called McLaughlin Transportation Systems, Inc. (MTSI). The plaintiff and the defendant jointly own MTSI.

This case concerns a dispute between the plaintiff and the defendant over the ownership of MMCI, another family company. In 1973, the defendant signed a purchase and sale agreement to acquire this Portsmouth-based company from third-party sellers.

The plaintiff, however, recalled that he, the defendant, and John H. entered into an oral agreement prior to the purchase. Pursuant to this agreement, John H. purchased the company for his sons, placed ownership under the defendant's name because the plaintiff was a minor at the time, and

the defendant agreed to distribute the plaintiff's shares at some point in the future.

During the following decades, the companies remained separate on paper but operated as a single entity. The plaintiff managed the operations side of both companies, and the defendant managed the financial aspects. The companies shared employees, insurance policies, and technology and advertising services. Based upon this operating model and the oral agreement, the plaintiff believed that he owned fifty percent of MMCI. In 2019, however, a friend informed him that the defendant claimed one hundred percent ownership of MMCI.

In July 2020, the plaintiff filed a complaint in superior court against the defendant claiming, among other things, that the defendant's retention of one hundred percent of the company constituted unjust enrichment and seeking the imposition of a constructive trust over fifty percent of MMCI's stock. The defendant moved to dismiss all claims. As relevant to this appeal, the trial court denied the motion with respect to the plaintiff's claim seeking the imposition of a constructive trust. The defendant subsequently moved for summary judgment and later for partial summary judgment. The trial court denied both motions.

In November 2023, the trial court held an eight-day trial and empaneled a jury to issue an advisory verdict with respect to, as relevant here, the unjust enrichment claim that sought a constructive trust as a remedy. See RSA 491:16 (2010). The jury unanimously issued an advisory verdict in favor of the plaintiff on this claim. The plaintiff filed a motion to adopt the advisory jury verdict, while the defendant moved to set it aside.

The trial court issued an order imposing a constructive trust in favor of the plaintiff over fifty percent of the company's shares in April 2024. Specifically, the trial court ruled that the plaintiff established the three necessary elements of a constructive trust by clear and convincing evidence. The trial court further ruled that no statute of limitations defense applied because the plaintiff had proven by a preponderance of the evidence that he did not discover or have the reasonable opportunity to discover the defendant's claim of complete ownership of MMCI until 2019.

The defendant subsequently filed a motion for partial reconsideration, to which the plaintiff objected. The defendant also filed a motion for clarification and, alternatively, to stay the order. Before the court ruled on these motions, the defendant filed an appeal with this court. The trial court subsequently denied the motion for partial reconsideration and granted the motion to stay the order during the pendency of the appeal.

## II. Analysis

### A. Constructive Trust

We first address the defendant's argument that the trial court erred by finding that clear and convincing evidence supported the imposition of a constructive trust in favor of the plaintiff over fifty percent of MMCI's shares. We review sufficiency of the evidence claims as a matter of law. Salisbury v. Lowe, 140 N.H. 82, 83 (1995). We will uphold the findings and rulings of the trial court unless they are lacking in evidentiary support or tainted by error of law. In re Estate of Couture, 166 N.H. 101, 113 (2014).

It is within the trier of fact's province to determine the weight to be accorded the evidence presented. Salisbury, 140 N.H. at 83. Inquiry into the weight of evidence is treated as a matter of fact. Id. We view the evidence in the light most favorable to the plaintiff. In re Estate of Couture, 166 N.H. at 113. Our task is to determine whether a reasonable person could reach the same conclusion as the trial court on the basis of the evidence presented. See Shaka v. Shaka, 120 N.H. 780, 782 (1980).

No rigid requirements exist for imposing a constructive trust. Elter-Nodvin v. Nodvin, 163 N.H. 678, 681 (2012). Rather, a constructive trust may be imposed when clear and convincing evidence shows that a confidential relationship existed between two people, that one of them transferred property to the other, and that the person receiving the property would be unjustly enriched by retaining the property, regardless of whether the person obtained the property honestly. Id. The principle rests upon the doctrine that restitution will be compelled to prevent unjust enrichment. Patey v. Peaslee, 101 N.H. 26, 29 (1957). On appeal, the parties' dispute focuses on the trial court's findings and rulings with respect to the second and third elements. We address these in turn.

#### 1. The Oral Agreement

First, we consider whether the trial court correctly determined that clear and convincing evidence established that John H. transferred property to the plaintiff and defendant by entering into an oral agreement to purchase MMCI for them with the intent that the defendant would temporarily reserve fifty percent of the shares of MMCI to be distributed to the plaintiff in the future. The defendant asserts that the record contained insufficient evidence to support the trial court's finding that the oral agreement existed. After reviewing all the evidence in the record, we disagree.

In its order, the trial court determined that both direct evidence and "significant circumstantial evidence" supported the existence of the agreement. The trial court found that the "plaintiff credibly testified that in 1973, when he

3

was seventeen years old and the defendant was twenty years old, they had a conversation with John H." at their dinner table in which "John H. said he 'was going to be buying [MMCI]' and would put it under the plaintiff and defendant's ownership" but "couldn't put it under [the plaintiff's] name at first because [he] was a minor." Additionally, the trial court credited the plaintiff's testimony that John H. — during this dinner conversation — said that he wanted to place ownership under the parties' names rather than his own to isolate the effects of labor disputes, mitigate general liability concerns, and expand the business's operating authority.

The trial court also credited the testimony of several long-term employees that they understood that MMCI was owned by the plaintiff and the defendant. For example, the McLaughlins' long-time bookkeeper — who worked for the companies for over fifty years — testified at trial that she believed that MMCI was "owned by the McLaughlins together." Additionally, the certified public accountant who prepared corporate tax returns for the McLaughlins testified that she and her firm believed that the defendant and the plaintiff equally owned the company. She further testified that the defendant's claim that he did not share ownership with the plaintiff led her firm — which had provided services to the McLaughlin companies for several decades — to terminate its relationship with them. The testimony of these witnesses regarding the shared ownership of MMCI is consistent with the terms of the oral agreement and thereby supports its existence.

Evidence in the record about the McLaughlin Group, a holding company formed by the McLaughlins in the 1980s, further supported the existence of the oral agreement whereby the defendant agreed to share ownership of MMCI with the plaintiff. John H.'s attorney testified that the McLaughlin Group was formed to own all of the businesses owned by the family, including MMCI, and to ensure these assets were distributed equally to the plaintiff and defendant. The plaintiff and the defendant owned the McLaughlin Group in equal shares. The defendant attended the planning meetings and at no point asserted that he owned MMCI independently and did not want that company in the McLaughlin Group. In fact, he sent out a memorandum to company employees after the formation of the McLaughlin Group that stated: "[The] McLaughlin Group was formed as a holding company and owns McLaughlin Moving Company, Inc." (Emphasis added.) The evidence of the defendant's endorsement of the McLaughlin Group's purpose and ownership structure supports that the defendant signed the purchase and sale agreement subject to the oral agreement to eventually transfer fifty percent of the shares to the plaintiff.

The defendant nonetheless argues that the trial court erred by crediting the plaintiff's testimony over the "mountain of concrete, corporate evidence supporting [the defendant's] claim of sole ownership." The evidence in the record regarding the McLaughlins' record-keeping practices, however, supports the trial court's determination that "these facts do not necessarily refute the

4

existence of the oral agreement or negate the credibility of the plaintiff's testimony." Specifically, Kenneth McLaughlin — John H.'s brother — testified that John H. was "[s]uccessful, yes. Meticulous, not necessarily so." Further, the plaintiff testified that he asked the defendant to "fix[] . . . [the] paperwork, if it's not the right way" upon learning that the defendant — contrary to the terms of the oral agreement — claimed to independently own the company. Viewed in the light most favorable to the plaintiff, the record supports the trial court's conclusion that the corporate records were not consistent with the oral agreement as a result of poor record-keeping practices and not, as the defendant asserts, because of the absence of any such agreement.

Contrary to the defendant's argument, we conclude that the trial court did not err in finding that the evidence in the record satisfies the clear and convincing evidence standard. Cf. Salisbury, 140 N.H. at 82-84 (holding that the trial court's determination of the credibility of the plaintiff's testimony, despite conflicting testimony and documentary evidence, satisfied the clear and convincing evidence standard and upholding trial court's imposition of a constructive trust over stock shares). Here, our review of the record supports the conclusion that the trial court acted reasonably when resolving the conflicts between the parties' testimony in favor of the plaintiff, see Drucker's Case, 133 N.H. 326, 331 (1990), and determining the weight to be given to the corporate, financial, and other records. See Salisbury, 140 N.H. at 83-84. Accordingly, we conclude that there is sufficient evidence in the record to support the trial court's determination that the oral agreement existed.

2. Unjust Enrichment

Next, we address the defendant's challenge to the trial court's imposition of a constructive trust under the unjust enrichment element of its analysis. More specifically, the defendant argues that the trial court's analysis is flawed because its finding that permitting the defendant to retain complete ownership of the company would be unconscionable is not supported by case law or evidence. The defendant contends that unconscionability requires that the parties have grossly unequal bargaining power, and no such dynamic existed here. We disagree.

The equitable principle of imposing a constructive trust rests upon the rationale that restitution will be compelled to prevent unjust enrichment. Lamkin v. Hill, 120 N.H. 547, 551 (1980). The doctrine of unjust enrichment is based upon the principle that one shall not be allowed to profit or enrich himself at the expense of another contrary to equity. Estate of Mortner v. Thompson, 170 N.H. 625, 631 (2018). To state a claim, a plaintiff must sufficiently allege that the defendant was enriched at the plaintiff's expense through either: (1) wrongful acts; or (2) passive acceptance of a benefit that would be unconscionable to retain. Id.; see In re Estate of Couture, 166 N.H.

5

at 112 (setting forth the unjust enrichment inquiry in the constructive trust context).

To determine whether the defendant would be unjustly enriched, the trial court relied upon evidence establishing that the plaintiff invested significant time and labor into operating and growing MMCI. Specifically, at trial, the plaintiff testified that he "worked for [MMCI] for 50 years . . . knowing and understanding that [he] was 50-percent owner of the company." See Clooney v. Clooney, 118 N.H. 754, 758 (1978) (plaintiff's financial contributions to real property — made based upon her belief that she owned such property — showed evidence of unjust enrichment). The trial court also relied on testimony establishing that the defendant passively accepted labor and resources from MTSI for the past fifty years at a reduced rate. Specifically, the long-term bookkeeper for the McLaughlins testified that the low rates charged to MMCI for services and resources were based, in part, upon the understanding that the plaintiff and the defendant jointly owned that company. This testimony supports that the defendant's passive acceptance of these reduced rates over the course of several decades without distributing the plaintiff's shares to him constituted "a benefit that would be unconscionable to retain."

The evidence in the record about the terms of the oral agreement adds further support to the trial court's finding that the defendant would be unjustly enriched if he retained one hundred percent ownership of the company. As we previously observed, the record supports the trial court's conclusion that John H. purchased MMCI for the parties, subject to the oral agreement that entitled both the plaintiff and defendant to fifty percent ownership of the company. See Clapp v. Goffstown Sch. Dist., 159 N.H. 206, 211 (2009) (observing that "[u]njust enrichment may be available to contracting parties where the contract was breached, rescinded, or otherwise made invalid"); cf. Cadle Co. v. Bourgeois, 149 N.H. 411, 420 (2003) (finding no unjust enrichment in a claim for constructive trust where the party retained funds that she collected in accordance with enforcing the terms of a loan agreement). The record supports the conclusion that the defendant's retention of one hundred percent ownership of MMCI exceeded his allocated shares under the agreement at the plaintiff's expense, thereby supporting the trial court's finding of unjust enrichment.

Contrary to the defendant's assertion, we do not require a finding of grossly unequal bargaining power between parties to render retention of property unconscionable in the unjust enrichment context. See Clooney, 118 N.H. at 758; Milne v. Burlington Homes, Inc., 117 N.H. 813, 816 (1977); see also Salisbury, 140 N.H. at 83-84. Adopting such a rigid definition of unconscionability would be inconsistent with the court's "broad and flexible equitable powers which allow [the court] to shape and adjust the precise relief to the requirements of the particular situation," Chase v. Ameriquest Mortgage

6

Co., 155 N.H. 19, 24 (2007) (quotation omitted), that underlie the constructive trust remedy.  See In re Estate of Couture, 166 N.H. at 112-13.  Indeed, we have previously observed that "[t]he specific instances in which equity imposes a constructive trust are numberless, as numberless as the modes by which property may be obtained through bad faith and unconscientious acts."  Id. (quotation omitted).  Accordingly, we conclude that the trial court's determination that the defendant would be unjustly enriched by retaining total ownership over MMCI is supported by the evidence and not erroneous as a matter of law.

B. Statute of Limitations

Next, we address the defendant's argument that the trial court erred in determining that RSA 508:4, the applicable statute of limitations, did not bar the plaintiff's claim seeking the imposition of a constructive trust.  Specifically, the defendant argues that the discovery rule does not apply here to enable the plaintiff to bring his claim because the plaintiff discovered, or in the exercise of reasonable diligence, should have discovered the defendant's claim of complete ownership over MMCI by 2013 at the very latest.  According to the defendant, the statute of limitations thus expired before or during 2016.

Before addressing the merits of this argument, we must consider the defendant's contention that the trial court should have applied the current version of RSA 508:4, see RSA 508:4 (2010), rather than the prior version of the statute in effect in 1973.  See RSA 508:4 (Supp. 1972).  Assuming without deciding that the trial court should have applied the current version of the statute, we conclude that whether the current or prior version is applicable is a distinction without a difference under these circumstances because the plaintiff prevails under both.

These versions of the statute differ, as relevant here, because the legislature amended RSA 508:4 in 1986 to codify the common law discovery rule.  McCollum v. D'Arcy, 138 N.H. 285, 287 (1994).  The prior version did not expressly set forth a discovery rule standard.  See Beane v. Dana S. Beane & Co., 160 N.H. 708, 711-12 (2010).  Instead, it merely set forth a six-year limitations period.  McCollum, 138 N.H. at 287; RSA 508:4 (Supp. 1972). When applying this prior version of the statute, however, we have employed the common law discovery rule to toll the statute of limitations until the plaintiff discovers, or in the exercise of reasonable diligence, should have discovered, both the fact of the injury and the cause thereof.  McCollum, 138 N.H. at 287-88.  When determining whether to apply the common law discovery rule, a court must identify, evaluate, and weigh the parties' competing interests.  Id. at 286-87.

The legislature's 1986 amendment to RSA 508:4 established a three-year limitations period and codified the common law discovery rule. Id. at 287. The current version of RSA 508:4, I, provides:

> Except as otherwise provided by law, all personal actions . . . may be brought only within 3 years of the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, <u>the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.</u>

(Emphasis added.) According to RSA 508:4, I, the three-year limitations period does not begin to run until two prongs are satisfied: first, a plaintiff must know or reasonably should have known that he or she has been injured; and second, a plaintiff must know or reasonably should have known that his or her injury was proximately caused by the conduct of the defendant. <u>Balzotti Global Grp., LLC v. Shepherds Hill Proponents, LLC</u>, 173 N.H. 314, 321 (2020).

To obtain the benefit of the statutory discovery rule and overcome the defendant's statute of limitations defense, the plaintiff must prove that at least one prong was not yet satisfied at a time within three years of the plaintiff's commencement of the action. <u>Id</u>.; <u>Beane</u>, 160 N.H. at 713 (terming the codified discovery rule the "statutory discovery rule"). The discovery rule does not apply unless the plaintiff proves that the plaintiff did not discover, and could not reasonably have discovered, either the alleged injury or its causal connection to the defendant's alleged wrongful act or omission. <u>Balzotti Global Grp.</u>, 173 N.H. at 321. The rule is not intended to toll the statute of limitations until the full extent of the plaintiff's injury has manifested itself. <u>Id</u>. Rather, that the plaintiff could reasonably discern that the plaintiff suffered some harm caused by the defendant's conduct is sufficient to render the discovery rule inapplicable. <u>Id</u>. Further, a plaintiff need not be certain about this causal connection; the possibility that it existed will suffice to obviate the protections of the discovery rule. <u>Id</u>.

Under both the common law discovery rule, <u>see</u> <u>French v. R.S. Audley, Inc.</u>, 123 N.H. 476, 480 (1983), and the statutory discovery rule, whether the plaintiff exercised reasonable diligence is a question of fact. <u>See</u> <u>Black Bear Lodge v. Trillium Corp.</u>, 136 N.H. 635, 638 (1993) (citing <u>French</u>, 123 N.H. at 476). We defer to the trial court's findings of fact if they are supported by the evidence and not erroneous as a matter of law. <u>Town of Lincoln v. Chenard</u>, 174 N.H. 762, 765 (2022); <u>see</u> <u>French</u>, 123 N.H. at 480.

In its order, the trial court found that the plaintiff proved by a preponderance of the evidence that he did not discover or have a reasonable opportunity to discover that the defendant claimed sole ownership over the company until 2019. See Crowley v. Crowley, 72 N.H. 241, 246 (1903). The record supports this determination. At trial, the plaintiff testified that he did not learn that the defendant intended to retain complete ownership of the company until a friend told him in 2019. Multiple witnesses testified that they, too, only learned in 2019 that the defendant claimed he did not share ownership of MMCI with the plaintiff. In particular, the accountant who worked at the McLaughlins' long-standing accounting firm and prepared corporate tax returns for the companies testified that the defendant's assertion that he alone owned MMCI led her firm to terminate its relationship with the companies in 2020.

Evidence regarding the plaintiff's work responsibilities supports the trial court's determination that the plaintiff lacked a reasonable opportunity to discover, nor would have discovered with reasonable diligence, that the defendant did not intend to distribute the plaintiff's shares to him. Multiple witnesses testified that the plaintiff managed the operations side of the business for MMCI and MTSI, and the defendant managed the financial side. The plaintiff's management of the companies' dispatch, scheduling, shipment, manpower and employment operations — not the financial and business aspects of the companies — also supports the trial court's finding that he did not know, nor should have known in the exercise of reasonable diligence, that the defendant asserted that he alone owned MMCI.

Nonetheless, the defendant maintains that the statutory limitations period began to run after the plaintiff confronted the defendant in 2013 over a newspaper article that stated that the defendant "bought his own moving firm" in Portsmouth in the 1970s. The trial court concluded, however, that the plaintiff credibly testified that he believed that the 2013 article was "just puffery" and not a denial of the plaintiff's ownership interest in MMCI.

The record supports this determination. The article primarily focused on MTSI and indirectly referenced the defendant's ownership of MMCI in two sentences near the end of the article. The plaintiff testified that he became upset after reading the article because his "whole life was dedicated to the compan[ies]" but the article was "all about [the defendant]." He subsequently approached the defendant to discuss the article. The defendant said nothing, then responded that he "didn't mention [his wife] either." The substance of the conversation, combined with the minimal content about MMCI in the article itself, supports the trial court's finding that the plaintiff did not know, and could not have known in the exercise of reasonable diligence, that the defendant claimed to independently own MMCI at this point.

The defendant also asserts that the trial court erred in determining that the corporate documents listing the defendant as the sole shareholder of MMCI and signed by the plaintiff did not put him on notice. At trial, however, the plaintiff testified that he understood himself to be a shareholder in MMCI despite the corporate documents showing otherwise because he believed his shares had not yet been issued. He further testified that he did not receive shares in "any other [of the family] companies that [he] owned 50-50." Furthermore, Kenneth McLaughlin, whose father originally owned the first moving company that John H. acquired, testified that he did not find it strange that the plaintiff did not hold any shares in the company in the decades after its acquisition. The evidence in the record related to the family's practices for distributing corporate shares thus supports that the plaintiff did not discover and should not have discovered, in the exercise of reasonable diligence, the ownership claim before 2019 — despite his ratification of these records as the corporate secretary.

In light of the foregoing considerations, we conclude that the record supports the trial court's determination under RSA 508:4 (Supp. 1972) that the plaintiff did not know, and could not have known in the exercise of reasonable diligence, that the defendant claimed sole ownership prior to 2019. We further conclude as a matter of law that these findings of fact also satisfy the discovery rule standard under the current version of RSA 508:4. The plaintiff brought his action in July 2020. Therefore, the plaintiff's claim is not barred by the six-year limitations period under RSA 508:4 (Supp. 1972) or by the three-year limitations period under RSA 508:4 (2010).

Finally, we address the defendant's argument that the trial court erred by failing to properly balance the interests at stake when applying the common law discovery rule to toll the statute of limitations under the prior version of RSA 508:4. Specifically, the defendant argues that "[s]uch a balancing in this case should have resulted in a determination that the action accrued no later than 1977, when [the plaintiff] first confirmed [the defendant's] ownership of all of the shares of MMCI as MMCI's secretary."

This argument, however, is inapposite. When the prior version of the statute is applicable, the trial court balances the parties' interests to determine whether or not to apply the common law discovery rule. See McCollum, 138 N.H. at 287-88; see also Raymond v. Eli Lilly & Co., 117 N.H. 164, 170, 173-74 (1977). The determination of when the plaintiff discovered, or should have discovered in the exercise of reasonable diligence, the fact of his injury and its cause is a question of fact and a separate inquiry from whether to apply the discovery rule in the first place. French, 123 N.H. at 480. Accordingly, we decline to reverse the trial court's determination that the plaintiff did not discover or have a reasonable opportunity to discover that the defendant claimed complete ownership of MMCI before 2019.

10

### III. Conclusion

For the foregoing reasons, we affirm the trial court's order imposing a constructive trust in favor of the plaintiff over fifty percent of MMCI's shares. We have reviewed the record and find the parties' remaining arguments without merit. Vogel v. Vogel, 137 N.H. 321, 322 (1993); Sup. Ct. R. 25(8).

Affirmed.

DONOVAN and COUNTWAY, JJ., concurred; ABRAMSON, J., retired superior court justice, specially assigned under RSA 490:3, II, concurred.

**Timothy A. Gudas,**
**Clerk**